## RABUN COUNTY *vs.* HABERSHAM COUNTY.*

1. Where the county surveyors of two adjoining counties, upon be-
ing directed to determine the line between such counties, failed
to agree thereon, and called in the county surveyor of a third county
as umpire, and he made a survey of the line and returned it with
the requisite plats in the two counties, and record thereof was
duly made in one of them, whereupon the other county filed a
proceeding in the county where the record was made, seeking to
set aside such survey and plats and to vacate the record thereof,
and to have the act fixing the boundary line construed and another
survey ordered in conformity with a rightful construction thereof;
and where a demurrer was filed to such proceeding, on the ground
that the question involved was political or legislative in its char-
acter and not within the jurisdiction of the court, which demurrer
was overruled, and no exception was taken to that ruling, the ques-
tion of jurisdiction is not before this court and cannot be consid-
ered by it.

2. The act of 1828 cut off from Habersham and added to Rabun
county so much of the former county as lay north and east of a
line described in the act as follows: Beginning near the upper end
of the falls on Tallulah river at the corner of fraction number
one hundred and eighty-three in the thirteenth district of said
county of Habersham, thence the river (ridge) a northwest direc-
tion dividing the waters of said river Tallulah and the waters of
Panther creek, Deep creek, Seque creek, until said dividing ridge
intersects or strikes what is called Blair's line, thence on said
Blair's line until the same strikes Wild Cat creek, the line divid-
ing Rabun from Habersham county:

*Held*, that the act fixed a line, one terminus of which was at the cor-
ner of fraction number 183 and the other at Blair's line, and the
line contemplated was not an air-line but a ridge-line, that is, a
line having a ridge as a natural boundary from the starting point
to Blair's line. If there be such a ridge-line, and the general bear-
ing of it is in a northwest direction, that is the boundary contem-
plated by the act, and if the corner of the fraction is upon such
ridge, though not on the crest or top of it, there could be no leav-
ing the ridge in fixing the line; nor does it matter if the ridge had
more than one branch or prong, if there be a prong at the corner
of the fraction. The court should have charged in accordance
with this view, and a verdict finding in favor of an air-line not
conforming to this construction, was contrary to law and the evi-
dence.

*This case was argued at the last term, and reargued at the present term by or
der of the court. BLECKLEY, C. J., being disqualified, Judge FORT, of the South-
western circuit, was designated to preside in his stead.

(*a*) The use of the word "river" instead of "ridge" in the enrolled act is a manifest clerical error.

(*b*) Inasmuch as the act of October 20, 1887, prescribed another and better mode for determining disputed county lines, and as there cannot now be another survey under the previous law on the same subject, it is directed that the survey and the plats of the umpire be vacated and set aside, and that the record thereof be vacated and declared of no legal force and effect; the counties being remitted to their rights under the act of 1887.

February 27, 1888.

Boundaries.    County Matters.    Practice in Supreme Court.    Before Judge Estes.    Habersham Superior Court. September Term, 1886.

Reported in the decision.

Henry Jackson; C. H. Sutton; Pope Barrow, for plaintiff in error.

Alex. S. Erwin; Henry S. West, for defendant.

Fort, Judge.

In 1828, the legislature of Georgia passed the following act :

*An act to add a part of the county of Habersham to the county of Rabun.*

Section i. *Be it enacted, etc.,* That from and after the passage of this act, that so much of the county of Habersham as lies north and east of a line beginning near the upper end of the falls on Tallulah river at the corner of fraction number one hundred and eighty-three in the thirteenth district of said county of Habersham, thence the river [ridge] a northwest direction dividing the water of said river Tallulah and the waters of Panther creek, Deep creek, Seque creek, until said dividing ridge intersects or strikes what is called Blair's line, thence on said Blair's line until the same strikes Wild Cat creek, the line dividing Rabun from Habersham county, the same being a part of the thirteenth district of Habersham county, be added to and become a part of the county of Rabun; any law to the contrary notwithstanding.

Dawson's compilation, p. 140.

There is a manifest clerical error in the enrolled act in using the word "river" for "ridge," and this correction is suggested by the compiler, following the general usage in such cases. Clearly it was the intention of the legislature to use "ridge" for "river," so that the act should read, "thence the ridge . . . dividing the waters," instead of "thence the river . . . . dividing the waters." This correction is inevitable from the context, so that the act is to be construed with this correction.

For more than half a century the boundary fixed by this act was not surveyed, but the rapid development within the past few years of this most picturesque portion of the State has made it important to the two counties to know exactly where the true line that divides them is located. Realizing this, the grand jury of Habersham took action on the subject. They reported the line in dispute, and recommended that it be surveyed and established under the laws applicable to such cases. This recommendation was duly transmitted to the ordinary of Rabun county. The ordinary of Habersham notified and directed the county surveyor of said county to "run off, mark and define the line, taking all precaution to arrive at the true line." The ordinary of Rabun refused to issue a similar order until compelled by *mandamus* to do so. Thereupon he issued said order. The two county surveyors met according to law, when, failing to agree upon the true line, they called in the surveyor of Hall county as umpire. He agreed to serve; and at the appointed time, the umpire, with the other two surveyors, entered upon the discharge of their duties. When the work was completed, the umpire made a return of his survey, accompanied by the requisite plats. Two plats of the survey were made. One was forwarded to Habersham county, where it was duly recorded; the other was forwarded to the ordinary of Rabun, who retained it in his possession and refused to file it for record. Being wholly dissatisfied with this determination of the line, Rabun county brought action in Hab-

ersham superior court, seeking to annul, set aside and vacate the umpire's return and survey. The declaration charged that the line surveyed by the umpire was not the true line; that it was the result of misconduct on the part of the umpire and the surveyor of Habersham; that it was not in conformity to a proper construction of the act of 1828; that it was based on a palpable mistake of law and fact; that it was wholly erroneous, without authority of law and void. The petition is elaborately drawn. It states the construction of the law as claimed by Rabun, and prays for equitable relief as follows: " That said survey and plats be set aside, the record thereof vacated; that the act of 1828 (fixing the line between the counties) be judicially construed and another survey ordered in conformity with a rightful construction of the same; and that such other and further judgment or decree be rendered as the nature of the case calls for."

To this action Habersham county filed a demurrer on the ground that the queston involved was political or legislative in its character, and not within the jurisdiction of the court, and that the legislature alone could give the relief sought.

A very full and comprehensive answer, maintaining the umpire's survey, denying misconduct and mistake, and otherwise fully responding to allegations in the petition, was filed. The court below overruled the demurrer, and no exceptions were filed to this ruling. It was competent for the defendant to have filed a cross-bill of exceptions and had this question distinctly made and decided by this court. Having failed so to do, the question is not properly before us, and we do not feel authorized to consider it. This is an appellate court, organized for the correction of errors, and the law has plainly prescribed the method for having the judgments of the lower courts reviewed and their errors corrected. This law was not pursued in this case, so far as the question of jurisdiction is concerned,

and we shall therefore determine only those questions made by the record.

Upon the trial of the case made by the pleadings, the jury found for the defendant, and a judgment was entered up confirming the return established by the umpire's report and ordering to record his report with accompanying plats.

Thereupon Rabun county moved for a new trial upon the grounds that the court erred in refusing to charge, as requested by plaintiff in writing, the following: "The act of 1828 is the law of this boundary. That act mentions but one line between the corner of fraction No. 183 and Blair's line. One terminus of that line is at the corner of the fraction; the other terminus is at Blair's line. The line in question is not an air-line, but a ridge-line. All the way the act calls for a natural boundary, that is, a ridge, from the starting point to Blair's line. If there should be such a ridge and the general bearing of it be a northwest direction, that is the boundary contemplated by the act. If the surveyor's corner of the fraction is upon that ridge, though not on the crest or top of it, there could be no leaving of the ridge in the fixing of the line. It matters not if the ridge has more than one branch or prong, if there be a prong at the corner of this fraction."

Also upon the further grounds that certain other requests were refused and charges given, not necessary to be incorporated here; and because the verdict was contrary to law and evidence and against the principles of equity and justice.

The court below refused a new trial on all the grounds of the motion, and this is the error complained of. Was the court below right in this judgment? We think not.

The line fixed by the umpire was an air-line and not a "ridge" line, as contemplated by the act of 1828. It began three degrees north of west and crossed all creeks and streams intervening, and can in no sense of the terms used be denominated a "ridge" line in a northwest direction. It

is obvious that the line run by the umpire was not in conformity to the act defining the boundary, and we need not further discuss this question, for the learned counsel for defendant in error frankly conceded this in his argument. He relied here mainly on the questions of jurisdiction, insisting, however, that the true line would give to Habersham more territory than the umpire's line.

Besides, we think the request to charge, which was refused by the court below, embodied a proper construction of the act of 1828, and should have been given to the jury. It states what we hold to be the true meaning of the legislature, and a line which does not conform to this construction cannot be the correct boundary between the two counties. For this reason, and because we think the verdict contrary to the law and evidence, a new trial should have been granted and is ordered. Inasmuch as the legislature, on October 20, 1887, prescribed another and better mode for determining disputed county lines, and as there cannot now be another survey under the previous law on the same subject, we direct that the survey and plats of the surveyor of Hall county, as umpire, be vacated and set aside, and that the record thereof be vacated and declared of no legal force and effect. This judgment remits the counties to their rights under act of 1887, and in view of our construction of the act of 1828, there need be no difficulty in fixing the true dividing line.

Judgment reversed with directions.