Lancaster County v. Lancaster City, Appellant.

*Statutes—Construction—Substitution of words—Act of April 13, 1854—Opening of streets in city of Lancaster—Remedy—Mandamus.*

The word "county," which is the one hundred and eighteenth word in § 3 of the act of April 13, 1854, P. L. 352, is a clerical mistake for the word "city," apparent on the face of the act.

The remedy under the act of April 13, 1854, P. L. 352, by the county, to recover money from the city of Lancaster for opening streets, may be

either by assumpsit or bill in equity; but the remedy by mandamus is not appropriate.

*Statute of limitations—Accounts—Condition precedent—Act of* 1854.

The act of April 13, 1854, P. L. 352, relating to accounts between the city of Lancaster and the county of Lancaster, contemplates yearly settlements and the striking of a balance once every twelve-month. If the county has not kept the account directed by the act, the court will state an account, and will not allow recovery for any items which had accrued six years prior to the date of the suit.

The direction in the act that the county shall keep an account with the city is merely directory, and is not a condition precedent either to the county's right to sue, or its right to recover.

Argued Feb. 12, 1894. Appeal, No. 313, Jan. T., 1893, by defendant, from judgment of C. P. Lebanon Co., Dec. T., 1891, No. 170, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ. Affirmed.

Assumpsit to recover moneys paid for opening streets or alleys in the city of Lancaster.

The claim was based upon the act of April 13, 1854, P. L. 352, the material portions of which were as follows:

" Sec. 1. That the Court of Quarter Sessions of Lancaster County shall have the power to authorize the extension and opening of all streets and alleys within the city of Lancaster, in the manner directed, by and under the provisions of the general road laws of this commonwealth, except so far as the same may be herein altered or supplied.

" Sec. 3. That the commissioners of Lancaster county shall open an account with the city of Lancaster, showing the amount contributed by said city within the past two years, towards opening roads and erecting and repairing bridges in said county, and the amount drawn from the county treasury within the same period for opening streets or alleys in said city, to which account shall be charged or credited, from time to time hereafter, the sums contributed or received by said city for said purposes, and any damages that may be incurred by the opening and extending of streets and alleys, while the balance on said account is against the city, shall be payable out of the treasury of said *county*, and be reimbursable out of the county treasury only when the balance shall be in favor of said city, and to the extent of such balance."

Verdict for plaintiff for $125,612.89, subject to the following points reserved: (1) Whether upon the uncontradicted evidence the plaintiff is entitled to recover at all. (2) If entitled to recover, whether the statute of limitations is a valid partial defence.

The court subsequently entered judgment for $74,584.34, in the following opinion by McPherson, J.:

"By section 8 of the act of May 8, 1850, P. L. 751, it was provided, inter alia, that all damages caused by the laying out of any street or alley in the city of Lancaster should be paid, not by the county but by the city. This of course included damages for injuring or removing buildings as well as for the taking of land.

"The act of 1854, P. L. 352, which repealed section 8 of the act of 1850, relieved the city to some extent. It left it liable, as under the act of 1850, for all damages caused by injuring or removing buildings, but allowed it to apply to the payment of damages for land taken a certain proportion of the county tax collected from the taxpayers of the city. This is the substance of the act although the result just stated is reached by a somewhat roundabout process. The method adopted by the act is this: The county is made primarily liable to the landowner for the damages caused by taking his land, the city continuing to be liable, both first and last, for the damages caused by injuring and removing buildings. In any given year the amount thus advanced by the county (and it is really nothing more than an advance on behalf of the city) is charged against the city, and the city is then credited with the proportion of county tax which its taxpayers have contributed towards opening roads and erecting and repairing bridges in the county. If the difference is in favor of the city it is entitled to be paid in money (which it may recover by suit if necessary), or to have a credit carried over to the next year, but if the difference is in favor of the county, i. e., if the city has spent in advance a part of its proportion of the county tax for the next year, then the damages for land taken (as between the county and the city) are no longer to be paid by the county but by the city, until there is again a balance in favor of the city, whereupon these damages are once more to be paid by the county, but (as between the county and the city) only 'to the extent of such balance.'

"It seems quite clear that this simply amounts to allowing the city to draw back a varying sum each year from the county tax, and to use it in payment for land taken in opening streets. But the landowner is not bound to inquire into the state of the accounts between the county and city and to look to one or the other as the balance may be found to incline. As between the county and the landowner the county is made primarily liable to any extent which viewers and juries may determine; but, as between the county and the city, the county is only bound to pay for this particular purpose a varying proportion (but one easily calculated) year by year, of the city's contribution to the county tax. If this proportion is not enough to repay the county its advances to the landowners, one of two things may be done: Either the balance against the city may be carried over for a year or for several years in the hope that succeeding credits may restore the equilibrium; or if the balance is so large that this would involve a delay the county considers unreasonable, an action may be brought to recover what is due, and a new starting point for the future accounting may be reached. Indeed, there is a third course which the county may adopt if it sees proper: It may sue for any balance in its favor, whether large or small, but ordinarily we presume so strict a settlement would not be insisted upon.

"In brief, the act makes the county the paymaster for land taken, and requires it to advance to the landowner whatever may be needed for this purpose, whether the city is its debtor or its creditor; but, as between the city and the county, the county is only bound to pay—or perhaps to speak more accurately, to pay back—the city's due proportion of the county tax. This proportion the county controls, for it has the money in its own hands; whatever sum it pays beyond this is really lent to the city—lent by compulsion of the statute, and in our opinion may be recovered by suit.

"This view of the act of 1854 is only a restatement in other language of the construction already announced by the Supreme Court in Lancaster County v. Frey, 128 Pa. 593, as a few extracts from the opinion will show. On pages 597 and 598 Mr. Justice CLARK says: 'It is conceded that by force of the second section of the act of 1854 all sums awarded for damages for the opening of streets in the city of Lancaster are to be

paid out of the county treasury, with the exception of such damages as may accrue from the removal of or injury to any house, etc., which are to be separately assessed and paid out of the city treasury. The second section as thus construed is a complete adjustment of the rule of responsibility attaching to the city and the county for the opening of streets within the city. . . . In the third section it is assumed that under the second the county will expend county funds in payment of damages as therein provided, and the policy of the third section is that the city shall not thus withdraw from the county fund more than she contributes to it; that is to say, the city is responsible to the county that the amount thus expended in its behalf shall not exceed the amount contributed by the city to the county funds for opening roads,' etc. He then shows that the one hundred and eighteenth word in the third section should be read ' city ' instead of ' county ' —a conclusion which we adopt in the present case, as the question is again raised and we are asked to pass upon it—and proceeds to say on page 599: ' But this obligation of the city was to the county, upon which by the second section the primary obligation to pay was imposed.' After explaining why the county must be primarily liable to the landowner, the learned justice declares that the city must repay the county if the latter has been forced to advance too much; ' hence it was provided that the county commissioners should open an account with the city of Lancaster, showing the amount contributed by the city to the county treasurer towards opening roads, etc., on the one side, and the amount withdrawn from the county treasury for opening streets, etc., in the city on the other side; and, whilst the balance on that account was against the city, the damages incurred in the opening of streets in the city should be payable out of the treasury of the city—payable to the county, of course, who is primarily liable to the property holder.' The opinion is summarized in the concluding sentence: ' We are of opinion that the question of the liability of the city in each case can only be raised in a proceeding between the county and the city; that the property holder must resort to the county treasury, and the county must in a proper case resort to the city; and further, that the city upon payment of any such claim is reimbursable out of the county treasury, when the balance is in favor of the city, to the extent of such balance.'

"It will be observed that this construction accords with the rule declared by Mr. Justice SHARSWOOD in Holl v. Deshler, 71 Pa. 301: 'Every part of a statute should be brought into action in order to collect from the whole one uniform and consistent sense if that may be done, or, in other words, the construction must be made upon the entire statute and not merely upon disjointed parts of it: Broom's Leg. Max. 513. "It is the most natural and genuine exposition of a statute," says Lord Coke, " to construe one part of the statute by another part of the same statute, for that best expresseth the meaning of the makers."' The same rule is to be found in Potter's Dwarris on Statutes, p. 144, in this language: 'In the construction of a statute every part of it must be viewed in connection with the whole, so as to make all its parts harmonize if practicable and give a sensible and intelligent effect to each. It is not to be presumed that the legislature intended any part of a statute to be without meaning.'

"And to this construction it is not sufficient to object that the act does not expressly give the county a right to sue, and, therefore, that no suit of any kind can be maintained. For the act clearly requires the county to advance money on behalf of the city, and, unless it manifestly appeared that the county was restrained from recovering its advances, it seems to us that this necessarily carries with it a right to sue if repayment is refused.

"As to the form of action, we think it may be either assumpsit or a bill in equity. Ordinarily assumpsit would be an adequate remedy, and in the case before us at least we see no need for a resort to equity. All the facts are either agreed upon or not disputed, there are no complex, mutual rights to be adjusted, and the only contention is over the proper legal principles to be applied. It is easy to do complete justice in this proceeding, and it would, therefore, be most inequitable at the very end of the controversy to turn the parties over to another tribunal and, merely for the sake of form, compel them to prove again the facts already proved or admitted, and to advance again the same legal propositions.

"For the same reason, namely, the ability of the court to do complete justice, either in this proceeding or by bill in equity, the remedy by mandamus is not appropriate. This writ lies 'where there is a clear legal right in the relator, a correspond-

ing duty in the defendant, and a want of any other adequate, appropriate and specific remedy : ' Easton v. Water Co., 97 Pa. 560. It is used 'only as a process in the last resort; never where there is a specific remedy : ' Ins. Co. v. Com., 92 Pa. 77.

" It was argued, however, that, even if a right of action is given by the statute, the keeping of the account mentioned in section 3 is a condition precedent, and as no such account is shown to have been kept, no recovery can be had in the present suit. Doubtless the act does contemplate the keeping of a formal account, and such an account ought to be kept, but we think the provision is directory merely, and that the failure to keep it will not prevent a recovery. It is not always easy to determine whether a provision is mandatory or only directory, but there are two good rules which are often of much assistance in deciding this question. The first is referred to in Bladen v. Phila., 60 Pa. page 466 : ' Where the words are affirmative and relate to the manner in which power or jurisdiction vested in a public office or body is to be exercised, and not to the limits of the power or jurisdiction itself, they may and often have been construed to be directory.' See also Pittsburgh v. Coursin, 74 Pa. 401; Dewhurst v. Allegheny, 95 Pa. 442; Hersberger v. Pittsburgh, 115 Pa. 86; Cusick's Election, 136 Pa. 470; Potter's Dwar. St., p. 222, note 29. The other side of the rule is approved in Norwegian St., 81 Pa. 353–4, in the following language : ' There is a class of cases which hold that whether a statute is to be regarded as directory or not, is made to depend upon the employment or failure to employ negative words which import that an act should be done in a particular manner or time and not otherwise.' Perhaps Lord MANSFIELD'S rule in Rex v. Loxdale, 1 Burr. 445, is a better one (and this is the second rule we have in view), that ' whether a statute is mandatory or not depends on whether the thing directed to be done is the essence of the thing required.'

" Tried by either of these rules, we think it must be said that the direction to keep an account is not a condition precedent either to the county's right to sue or its right to recover; and we may add that in fact no harm has been done by the failure to keep the account, for we have now before us in orderly detail every item which such an account, if kept year by year, would have shown, and these items have always been readily

accessible to either party in the records of the county and of the county offices.

"We are of opinion, therefore, that the plaintiff is entitled to recover in this action, but are also of the opinion that the statute of limitations is a valid defence to part of its claim. Taxes are yearly contributions; almost all public accounts are settled annually, and we think the act contemplates yearly settlements and the striking of a balance once a twelve-month. If this had been formally done there could be no doubt that a right of action would have accrued year by year when the balance was struck, and that the statute would now bar recovery, except for six years preceding date of suit. In effect, however, the county has been treated in this action as if the account had actually been kept as required by the act, and we think it may fairly be held to all the consequences which in that event would have followed. Moreover, as the balance each year was hardly more—and might indeed be nothing more —than a matter of arithmetical calculation, it does not seem unreasonable to consider the balance as formally struck, although the computations were not actually made. And still further—and perhaps alone of decisive weight—since the duty of keeping the account was laid upon the county, it can hardly set up its own neglect as a successful answer to the plea of the statute, and thus derive a benefit from its failure to obey the law.

"The amounts named in the verdict were agreed upon by the parties, and, in accordance with the views above expressed, we direct judgment to be entered for the plaintiff on the points reserved in the sum of seventy-four thousand five hundred and eighty-four dollars and thirty-four cents ($74,584.34)."

*Error assigned* was entry of judgment as above.

*W. U. Hensel* and *J. Hay Brown, W. T. Brown* and *John E. Snyder*, city solicitor, with them, for appellant.—The legislature made the county liable and the word "county" cannot be changed by construction to mean "city" in the act of April 13, 1854, P. L. 352; 1 Kent, 447; Miles v. Stevens, 3 Pa. 42; Ihmsen v. Navigation Co., 32 Pa. 157; opinion of court below in Com. v. Martin, 107 Pa. 190; Endlich on

Stat., par. 319. This point in Lancaster Co. v. Frey, 128 Pa. 593, is obiter dictum.

The courts cannot impose such liability by liberal construction: People v. Supervisors, 16 Mich. 257; Waller v. Harris, 20 Wend. 555; Southwark Bank v. Com., 26 Pa. 450; Rex v. Great Bentley Inhabitants, 10 B. & C. 520; Schooner Pauline's Cargo v. United States, 7 Cranch, 52; Reiser v. Saving Fund Assn., 39 Pa. 144; Potter's Dwar. St. 186, 199, 200, 203, 204, 207, 208, 210; U. S. v. Shawls, 2 Paine's C. C. R. 166; Evans v. Myers, 25 Pa. 116; Blake v. Nat. Banks, 23 Wallace, 319; Co. Litt. 381; Sedgwick, St. 219, 226, 253, 261–4, 325, 326; State v. Weigel, 48 Mo. 29; Acts of April 6, 1850, P. L. 402; May 8, 1850, P. L. 751; Monson v. Chester, 22 Pick. 385; King v. Burrell, 12 A. & E. 468; Lamond v. Eiffe, 3 Q. B. 910; Rex v. Stoke Damerel, 7 B. & C. 569; Rex v. Ramsgate, 6 B. & C. 712; Green v. Wood, 7 Q. B. 178; Beebee v. Griffing, 14 N. Y. 244; McCluskey v. Cromwell, 11 N. Y. 593.

This is not the correct form of action: People v. Edmonds, 17 Barb. 472; McCullogh v. Mayor, 23 Wend. 458; High's Ex. Leg. Rem., 2 ed. 384.

The Lancaster city act of 1873, P. L. 811, repeals the act of 1854; Martz's Election, 110 Pa. 502; Westfield Bor. v. Tioga Co., 150 Pa. 160; Phila. & Erie R. R. v. Catawissa R. R., 53 Pa. 20; Grant v. Hickcox, 64 Pa. 334; Goddard v. Gloninger, 5 Watts, 209; Union Ins. Co. v. Hoge, 21 How. 35; Hahn v. U. S., 107 U. S. 402.

A strict construction is required. East Union Twp. v. Ryan, 86 Pa. 459; Endlich, St. § 345; Moyer v. Penna. Slate Co., 71 Pa. 293; Lane's Ap., 105 Pa. 49; O'Reilly v. Bard, 105 Pa. 569; Hollister Bank, 27 N. Y. 393; Detroit v. Chaffee, 70 Mich. 80.

Courts cannot go behind the law to rewrite it: Bank of Penna. v. Com., 19 Pa. 156; County of Cumberland v. Boyd, 113 Pa. 57; Kilgore v. Magee, 85 Pa. 401; Haddock v. Com., 102 Pa. 248; Field v. Clark, 143 U. S. 649; Pittsburgh v. Kalchthaler, 114 Pa. 547.

The keeping of an account was a condition precedent. This is a bar to the action: Allegheny v. Ry., 22 W. N. 400.

*W. F. Beyer* and *A. F. Hostetter, Geo. A. Lane,* county so-

licitor, with them, for appellee, cited: Lancaster Co. v. Frey, 128 Pa. 593; Worth v. Peck, 7 Pa. 268; Kelly Twp. v. Union Twp., 5 W. & S. 535; Phila. v. R. R., 102 Pa. 190; Keller v. Com., 71 Pa. 413; Com. v. Marshall, 69 Pa. 328; Endlich, St. 36, 435, 618, 621; Erie v. Bootz, 72 Pa. 199; Potter's Dwar. St. 110, 144, 222; Newell v. People, 7 N. Y. 97; Com. v. Kimball, 24 Pick. 370; Big Black Creek Imp. Co. v. Com., 94 Pa. 450; Ihmsen v. Nav. Co., 32 Pa. 157; Com. v. Conyngham, 66 Pa. 99; Bachler's Ap., 90 Pa. 209; People v. Cook, 14 Barbour, 290; Norwegian St., 81 Pa. 353; Bladen v. Phila., 60 Pa. 466; Moorhead v. Pearce, 2 Yeates, 458; Stroble v. Smith, 8 Watts, 280; Smull v. Mickley, 1 Rawle, 95; Rodebaugh v. Sanks, 2 Watts, 11; Doe v. Bodenham, 9 B. & C. 493; Smith v. Jones, 1 B. & Ad. 333; Easton v. Water Co., 97 Pa. 560; Ins. Co. v. Com., 97 Pa. 77.

PER CURIAM, March 26, 1894:

This case depends mainly on the true intent and meaning of the act of April 13, 1854, P. L. 352, entitled "An act relative to the opening of streets in the city of Lancaster." That act was properly before us for construction in County of Lancaster v. Frey, 128 Pa. 593; and after full consideration it was there held that the word "county," which is the one hundred and eighteenth word in the 3d section thereof, is a clerical mistake, for the word "city," apparent on the face of the act. In delivering the opinion of the court our late brother CLARK said: "It is perfectly manifest that the word 'county,' the one hundred and eighteenth word in the third section, is a mere clerical error in the transcribing of the act. That the damages should be paid out of the treasury of the county and be reimbursable out of the county treasury, etc., is a manifest misuse of words. No such thing could have been in the mind of the legislature, for the proposition involves an absurdity. The obvious meaning and purpose of the act is plain from the context. It needs no argument to show that the word 'county' was mistakenly written for 'city,' and it is a mistake apparent on the face of the act, which may be rectified by the context."

The very able and ingenious argument of learned counsel for defendant, on the question of construction, etc., induced us to reconsider the subject, but we are not convinced that the

construction given to the act in the case referred to is either erroneous or unwarranted.

In his clear and exhaustive opinion on the questions of law reserved, the learned judge of the common pleas has not only recognized and acted upon the authority of the case above cited, but he has also so well considered and correctly disposed of all the material questions involved that we deem it unnecessary to add anything to what he has so well said.

We find nothing in the record that requires either reversal or modification of the judgment.

Judgment affirmed.