## The Indiana, Illinois and Iowa Railroad Company
*v.*
### The People *ex rel.* W. E. Baker.

*Filed at Ottawa November 27, 1894.*

1. Taxes—*county clerk not bound by statement in schedule of railroad company as to location of property.* A county clerk, in distributing the amount certified by the Auditor as assessed on a railroad track in his county by the State Board of Equalization, may extend the tax for a village through which the railroad passes, although the schedule which the railroad company is required to file with him does not disclose the fact that the property is within such village, such clerk having the right, under the statute, to resort to other sources for information as to the location of the property.

2. Statutes—*construed according to intent, disregarding the letter.* A statute which, by its title, purports to "extend the corporate powers" of a town previously incorporated, and which provides that the boundaries of such town shall include specified parts of sections in a designated range which is twelve miles distant from the town as originally laid out, and in another county, will be construed as referring to the true range in which the original town was located.

Appeal from the County Court of Livingston county; the Hon. B. R. Wallace, Judge, presiding.

Wheeler & Hunter, and George Torrance, for appellant:

A construction of a statute not supported by the words should not be adopted, even though the consequences might defeat the object of the act. *Fry* v. *Railroad Co.* 73 Ill. 399.

The meaning and intent must be ascertained from the words employed, without adding thereto or taking therefrom. *Steere* v. *Brownell,* 124 Ill. 27.

The tax against railroad right of way, main and sidetracks, etc., is to be extended by the county clerk upon the property contained in the statement or schedule filed by the company. Rev. Stat. chap. 120, secs. 41-45.

The county clerk has no authority to extend taxes against property omitted from assessment, unless it is

first placed on the tax book by the assessor. Rev. Stat. chap. 120, sec. 278.

An assessment made by a person not authorized for that purpose by the General Assembly is void. *Railroad Co.* v. *People*, 98 Ill. 350.

The act of the clerk in extending taxes without a proper schedule or certificate on file is without authority. *Weber* v. *Railway Co.* 108 Ill. 451.

R. S. McIlduff, and Strawn & Norton, for appellee :

The rule is too well settled to admit of dispute, that all laws exempting property from taxation are to be strictly construed, and all reasonable intendments indulged in favor of the State, and all doubts solved in its favor. *Montgomery* v. *Wyman*, 130 Ill. 21, and cases cited.

Equally true is the proposition that all officers connected with the assessment, levy and collection of a tax are presumed to have performed their duty according to law. *People* v. *Givens*, 123 Ill. 352 ; *Chiniquy* v. *People*, 78 id. 574.

It is a rule of construction that the most natural exposition of a statute is to construe one part by another part of the same statute, and thus, from a view of the whole, discover the meaning. *Perteet* v. *People*, 65 Ill. 232.

The intention of the legislature is to be ascertained from the act itself, and other acts *in pari materia.* *Stribling* v. *Prettyman*, 57 Ill. 375.

In construing a statute, the primary consideration is to ascertain and give effect to the legislative intention. In order to accomplish this object the court should look at the whole act, and seek to ascertain such intention by an examination and comparison of its various provisions. *Mason* v. *Finch*, 2 Scam. 223 ; *People* v. *Canal Comrs.* 3 id. 153 ; *Soby* v. *People*, 134 Ill. 71.

The general rule is, that words are to be interpreted according to common and popular acceptation and im-

port, in such way as to carry into effect the whole law. *Steere* v. *Brownell*, 124 Ill. 31.

Courts are not confined to the literal meaning of words in a statute, in its construction, but the intention may be collected from the necessity or cause of the act, and its words may be enlarged or restricted according to its true intent.    *Castner* v. *Walrod*, 83 Ill. 179 ; *Cruse* v. *Aden*, 127 id. 239.

The limited meaning of words will be disregarded when it is obvious, from the act itself, that the use of the word was a clerical error, and that the legislature intended it in a different sense from its common meaning. Sutherland on Stat. Const. sec. 238.

Where a word in a statute would make the clause in which it occurs unintelligible, the word may be eliminated and the clause read without it.    Sutherland on Stat. Const. sec. 240.

Where one word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied.    Sutherland on Stat. Const. sec. 260.

A statute may be construed contrary to its literal meaning when a literal construction would result in an absurdity or inconsistency, and the words are susceptible of another construction which will carry out the manifest intention.    Sutherland on Stat. Const. sec. 324; *People* v. *Hoffman*, 97 Ill. 234.

The argument of inconvenience, like the argument of absurdity, may be used with great force.    Sutherland on Stat. Const. sec. 324.

Any legislation in the act under consideration appertaining to any other town or territory would be unconstitutional and void, as not expressed in the title of the act.    Sutherland on Stat. Const. sec. 211.

This court will take judicial notice that Livingston county was acting under the Township Organization law,

and that the town of Dwight was a township in said county. *Bruner* v. *Madison County*, 111 Ill. 16.

The village was incorporated under the general law in July, 1875, and of that fact the clerk had a right to take notice in extending the tax, and the courts should take judicial notice of it. Starr & Curtis, chap. 24, part 1, sec. 6 ; id. part 11, sec. 11.

CRAIG, J.:  This is an appeal by the Indiana, Illinois and Iowa Railroad Company from a judgment rendered by the county court of Livingston county for taxes due the village of Dwight for the year 1893.  On the second day of May, 1894, the county collector of Livingston county filed in the county court of that county a list of lands and town lots upon which he had been unable to collect taxes.  In this list he reported that he had been unable to collect $229.32 of the municipal taxes of the village of Dwight as extended against the Indiana, Illinois and Iowa Railroad Company.  The railroad company appeared in the county court and filed objections to the application for judgment, but they were all overruled and judgment rendered on the application of the collector.

It is first contended by appellant that the county clerk had no authority to extend the tax, for the reason that the railroad company had filed no list or schedule in his office showing that the property taxed was within the limits of the village.  Section 41 of the Revenue law requires railroad companies to make out and file with the county clerk, in the month of May, 1873, and at the same time in each year thereafter when required, a sworn list or schedule showing the property held for right of way, and the length of the main and all side and second tracks and turn-outs in such county, and in each city, town and village in the county through or into which the road may run, etc.  Section 48 also requires sworn statements or schedules to be furnished by railroad companies to the

154—36

Auditor.   Section 50 requires these statements sent the Auditor to be placed before the State Board of Equalization, annually, on the meeting of the board, and requires the board to assess.   Section 109 provides that said board shall also assess the railroad property denominated in this act as "railroad track" and "rolling stock."   The amount so determined and assessed shall be certified by the Auditor to the county clerks of the proper counties. The county clerk shall in like manner distribute the value so certified to him by the Auditor to the county, and to the several towns, districts, villages and cities in his county, entitled to a proportionate value of such railroad track and rolling stock, and said clerk shall extend taxes against such values the same as against other property in such towns, districts, villages and cities.   See, also, section 51.

On the hearing, Albert I. Baker testified that he was deputy county clerk of Livingston county, and had held that position since December 1, 1890.   He also testified: "I have charge of the extension of taxes upon the tax books, and extended the taxes for the village of Dwight against the Indiana, Illinois and Iowa Railroad Company for the year 1893, for which judgment is now asked. I extended the taxes on the assessment made by the State Board of Equalization, and made distribution between the various townships and school districts from the schedule now shown me, returned to the county clerk's office by the Indiana, Illinois and Iowa Railroad Company, dated May 1, 1893.   There is no other schedule or list of any kind of property owned by said company filed in the county clerk's office for the year 1893 than this one.   The return made by the State Board of Equalization, to which I have referred, is made in gross for the whole county, and not distributed, when returned, between the particular townships or districts.   The book marked 'Railroad Tax Book,' now shown me, on page 68 contains a list of the taxes extended by me against the Indiana, Illinois

and Iowa Railroad Company within the county of Livingston, for the year 1893.    After the extension of the taxes the book was delivered to the county treasurer and *ex-officio* collector of the county of Livingston."

The schedule referred to by the witness was put in evidence, and shows it was made in pursuance of the act of the General Assembly requiring railroad companies to file schedules of their property for taxation, and contains railroad track belonging to or controlled by the company, and the listed value thereof; rolling stock belonging to or controlled by the company, and the listed value thereof; the length, in feet, of main track on which said rolling stock is used elsewhere; tools and materials for repairs, and all other personal property except rolling stock, belonging to or controlled by the company, and the location and listed value thereof; all real estate, other than railroad track, belonging to or controlled by the company, its location and listed value; a recapitulation showing the proportion of the several classes of property listed in the schedule, lying in each township, city or village in the county.    It schedules or lists no property of the company within the corporate limits of the village of Dwight, except track tools of the value of $30.

The position of counsel for appellant, as we understand the argument, in substance, is:    As the schedule filed by the railroad company under the requirements of section 41 does not disclose that the railroad track lies within the incorporated limits of the village of Dwight, the county clerk had no authority whatever, in distributing the amount assessed by the State board on railroad track in Livingston county, to extend any taxes for the village of Dwight against the railroad company.    We do not concur in this view.    As has been seen, the assessment is made by the State Board of Equalization.    The county clerk has nothing whatever to do with the making of the assessment, but after the amount the railroad shall

be assessed has been determined and transmitted to the county clerk of the county, then it becomes the duty of the county clerk to make the distribution among the towns, incorporated towns, cities or villages through which the railroad runs. If the schedule filed in the office of the county clerk shows what part of the railroad track runs through each town, village, incorporated town or city in the county, that may be followed by the clerk. But there is nothing in the statute which requires the clerk to follow the schedule returned. He may resort to other means in determining the fact. Ordinarily, a county clerk would have no trouble in ascertaining the correct location of a railroad through the county in which he was clerk, regardless of the schedules returned by the railway company; but if there should be doubt in any case, he would no doubt have the right to call to his aid a surveyor, and thus determine the fact by an actual survey. If the schedules returned by the railroad company were held to be conclusive, it would be within its power to defeat a proper distribution of the assessment among the different portions of the county, at any time, by making a false return. In 1893, when the county clerk of Livingston county received the amount of the assessment on the road in that county, the duty then devolved on the clerk to make a distribution to the towns, cities and villages along the line of the road, and if the line of the road ran through the incorporated village of Dwight, it was the duty of the clerk to apportion a part of the assessment to that village. The question, then, to be determined is, whether the railroad runs through the village of Dwight, as determined by the county clerk.

It appears from the record that Richard P. Morgan, on January 30, 1854, in conformity to the statute, surveyed and platted the south-west quarter of the south-east quarter of section 4, the south-east quarter of the south-west quarter of section 4, the north-west quarter of the north-east quarter of section 9, and the north-east quarter

of the north-west quarter of section 9, all in township 30, range 7, east of the third principal meridian, in Livingston county, into lots, blocks, streets and alleys, known as the town of Dwight. The plat was made, acknowledged and recorded as required by law. The line of appellant's railroad, as constructed, runs east and west through section 4 near the half-section line, the larger part south of the half-section line but a portion north of that line, but, as shown by the testimony of the surveyor, no part of the right of way extends more than 171 feet south of the half-section line, and that only for a short distance. It thus appears that the north line of the town of Dwight, as originally laid out, was almost a quarter of a mile south of appellant's line of road, and that the railroad, as laid out, did not run over or through any part of the town of Dwight as that town was originally laid out. If, therefore, the boundaries of the town have not been enlarged, it is plain that the railroad was not liable for the tax. But on the 24th day of March, 1869, the legislature passed an act to enlarge the boundaries of the town of Dwight. The title of the act and sections 1 and 2 are as follows:

"An act to extend the corporate powers of the town of Dwight.

"ARTICLE I.—Sec. 1. *Be it enacted by the people of the State of Illinois, represented in the General Assembly,* That the inhabitants in the town of Dwight, in the county of Livingston and State of Illinois, be and they are hereby constituted a body politic and corporate, by the name and style of 'The Town of Dwight,' and by that name shall have and use a common seal, which they may change and alter at pleasure.

"Sec. 2. That the boundaries of said town shall include within their limits the south half of section four (4) and the north half of section nine (9), all in township thirty (30), north, range nine (9), east of third principal meridian."

It will be observed that sections 4 and 9, upon which the town of Dwight was laid out, are located in township 30, north, range 7, east, in Livingston county. It will also be observed that township 30, north, range 8, east, extends to the east line of Livingston county, and Kankakee joins Livingston on the east. Did the legislature, in the passage of section 2 to enlarge the boundaries of the town of Dwight, intend to add to the boundaries of the town lands located twelve miles east, in Kankakee county, or was the addition to be made from adjoining lands in township 30, north, range 7, east, in Livingston county? When the entire act is considered, we are inclined to the opinion that the legislature intended, by the passage of the law, to declare that the boundaries of the town shall include within their limits the south half of section 4 and the north half of section 9, in township 30, north, range 7, east of the third principal meridian, but by mistake the word and figure "nine" were inserted instead of "seven."

In the construction of a statute the main consideration is to ascertain and give effect to the intention of the legislature. Here the legislature was enacting a law under which the inhabitants of certain territory should become incorporated, and the question, so far as this record is concerned, is what territory the legislature intended should fall within the provisions of the act. Was the territory in Livingston or Kankakee county? If we go to the first section of the act, it declares that the inhabitants of the town of Dwight, in the county of Livingston, be and they are hereby constituted a body politic and corporate, by the name and style of the "town of Dwight." Immediately follows section 2, fixing the boundaries of the territory in Livingston county which should be embraced in the incorporated town, but the section declares "that the boundaries of said town" (that is, the town of Dwight, in Livingston county,) "shall include within their limits the south half of section 4 and the

north half of section 9, all in township 30, north, range 9, east of the third principal meridian,"—that is, the land to be included within the limits of Dwight, in Livingston county, is twelve miles east of Dwight, in Kankakee county. It is unreasonable to believe that the legislature ever intended to include land twelve miles east of Dwight within and make it a part of the incorporated limits of that town. It is absurd to suppose the legislature ever entertained such an intention.

By section 20, article 6, of the act, it is provided that appeals from any final order of the town council for opening, widening, altering or straightening any street, etc., may be taken to the same court or courts of Livingston county which have by law jurisdiction in cases of appeals from decisions of justices of the peace. If the territory was located in Kankakee county and the litigation occur there, the provision of the act, to be consistent, would have required the appeals to be taken to the appellate courts of that county. By section 10 of article 7 it is provided that "appeals shall be allowed in all cases arising under the provisions of this act, or of any ordinance passed in pursuance of this act, to the county or circuit court of Livingston county," etc. By section 11 of the same article it is provided that "the president and trustees of the town of Dwight shall, immediately after the passage of this act, take measures to promulgate the same within said limits of the town." By section 13 it is provided that "the town marshal, or constable, or any other officer authorized to execute writs or any other process issued by the police magistrate of this town, shall have power to execute the same within the limits of the county of Livingston, and shall have power to execute any process issued by any justice of the peace of said county, and be entitled to the same fees for traveling and other services as are allowed to constables in similar cases." By section 16 it is provided that "all .

fines and penalties recoverable by indictment or action for any offense committed within the limits of said town, or within one mile of the same, and which are now required by law to be paid to the county treasurer or school commissioner of said (Livingston) county, shall be paid to the town treasurer."

From these provisions it is manifest that the entire act related solely to Livingston county, and that the legislature had no intention of embracing within the boundaries of the town of Dwight territory located in Kankakee county, but as the town of Dwight, as originally laid out, included only a part of the south half of section 4 and a part of the north half of section 9, in township 30, north, range 7, east, in passing an act to incorporate the town it was intended to extend the boundaries so as to include all of the south half of section 4 and the north half of section 9, in township 30, north, range 7, east.

If the language of section 2 of the act is to be given a literal meaning, then it is plain that the south half of section 4, township 30, north, range 7, east, is not within the incorporated limits of the town of Dwight. But in the construction of statutes, courts are not confined to the literal meaning of the words of a statute. The intention of the legislature in passing the act must be ascertained, and the intention may be collected from the necessity or object of the act, and its words may be enlarged or restricted according to its true intent, as held in *Cruse* v. *Aden,* 127 Ill. 231. "A statute may be construed contrary to its literal meaning when a literal construction would result in an absurdity or inconsistency, and the words are susceptible of another construction which will carry out the manifest intention." (Sutherland on Statutory Const. sec. 324; *People* v. *Hoffman,* 97 Ill. 234.) In the *Hoffman case* it was held that statutes must be interpreted according to the intent and meaning, and not always according to the letter. In *County of Perry* v.

*County of Jefferson,* 94 Ill. 214, the letter of a statute was disregarded and the intent followed in order to obviate an absurd result, and in the decision of the case it was expressly held to be sufficient authority to warrant a departure from the words of a statute when to follow them would lead to an absurd consequence.

In conclusion, we are satisfied that the appellant's line of road which was assessed was located within the incorporated village of Dwight, and appellant was liable for the tax.

The judgment of the county court will be affirmed.

*Judgment affirmed.*