STATE *ex rel.* REARDON, *County Attorney,* v. HOOKER, *County Judge.*

No. 1011. Opinion Filed May 10, 1910.

(109 Pac. · 527.)

1. JUDGES—Compensation — Performance of Marriage Ceremony. Prior to the passage at the Extraordinary Session of the Second Legislature of Senate Bill No. 1 (Sess. Laws 1910, c. 69, pp. 129-143), relating to the compensation of certain county and district offices, county judges were not given the right under the law then existing to charge a fee for the performance of marriage ceremonies.

2. STATUTES—Construction — Usage. Where the meaning of a statute is doubtful, long usage is a just medium by which to expound it and the fact that the officers whose duty it was to enforce section 1645, St. Okla. T. 1890, have for many years construed it so as not to require a county judge to collect and report fees received for performing marriage ceremonies, may be considered in construing such statute when it is sought to require such officer to account therefor to the county.

(Syllabus by the Court.

*Error from District Court, Oklahoma County; Geo. W. Clark, Judge.*

Action by the State, on the relation of E. E. Reardon, against Sam Hooker, county judge. Judgment for defendant, and plaintiff brings error. Affirmed.

*E. E. Reardon, E. R. Hastings,* and *J. W. Hayson,* for plaintiff in error.

*E. G. McAdams* and *W. P. Harper,* for defendant in error.—

Citing: *Douglas County v. Vinsonhaler* (Neb.) 118 N. W. 1059; *U. S. v. Hill*, 120 U. S. 169; *Smith v. Townsend*, 1 Okla. 117.

WILLIAMS, J. The defendant in error having been duly elected on the 17th day of September, 1907, as county judge of Oklahoma county, state of Oklahoma, and on the 16th day of November, 1907, having duly qualified, and entered upon the duties of such office, the question arises as to whether he is entitled to the fees or perquisites for performing marriage ceremonies, or is he required by law to report same to the board of county commissioners and pay such amount so collected into the county treasury.

Section 3362, St. Okla. T. 1890 (chapter 50, art. 1, § 12), provides that marriage "may be solemnized by either a justice of the Supreme Court, a judge of the probate court, or justice of the peace, a mayor, or by a minister of the gospel, or priest of any denomination; and in case of Indians, by the peacemakers, their agents, or superintendent of Indian affairs." Section 8, art. 1, c. 23, p. 210, Sess. Laws Okla. T. 1897, provides that marriage may be performed "by either a justice of the Supreme Court, a judge of a district or probate court, a justice of the peace, or a duly ordained, licensed or authorized preacher or minister of the gospel, priest or other ecclesiastical dignitary of any denomination." Section 1645, St. Okla. T. 1890 (chapter 19, art. 16, § 8), provides:

"The probate judges for any service performed by or in any matter within the jurisdiction of a justice of the peace shall be allowed the same fees as are allowed by law to justices of the peace for like services and in all civil actions triable in a probate court of which a justice of the peace has no jurisdiction the probate judge shall be entitled to receive the same fees as are allowed to a clerk of the district court for like services and shall be allowed further fees as follows: For each days' attendance upon trial of a case after the first day, two dollars; taking and approving bail bond, twenty-five cents; commission on money collected on judgment without execution, one per cent. on the amount."

On March 8, 1895, the Legislature of the Territory of Oklahoma passed a general fee bill, section 1 of which provides:

"That the officers and persons herein mentioned shall be entitled to receive for their services only the fees and compensations herein allowed and no other, except as may be otherwise required (provided) by law." (Laws 1895, c. 25, art. 1.)

Section 11 further provides:

"That whenever the probate judge of any county shall be compelled to perform any services for which no fees are fixed by law, he shall be entitled to receive therefor the same fees as may be by law allowed to district clerks for like services. * * * *"

It is insisted that this act of March 8, 1895, had the effect of repealing section 1645, *supra*. In view of the conclusion hereinafter reached, it is not essential to determine this question.

Section 18 of the Schedule to the Constitution provides that the duties and compensation of the probate judge under the laws of the territory of Oklahoma shall devolve upon and apply to the judge of the county court as it may exist under the state government, and that the judges of such court in counties having a population of more than 40,000 shall receive a salary of $3,000 per annum, such salary to be paid in such manner as is provided by the law in force in the territory of Oklahoma for the payment of salaries to county attorneys. Section 1, art. 3, c. 27, p. 289, Sess. Laws Okla. 1907-08, provides that the county judge shall receive as full compensation an annual salary in counties having a population of more than 50,000 inhabitants the sum of $3,000. Such provisions of the Schedule and of the act of the Legislature of 1907-08, as applied to the office of county judge of Oklahoma county result in the same salary; the special federal census of 1907 showing over 50,000 inhabitants in said county. It is the duty of the defendant in error as county judge of Oklahoma county to pay into the county treasury all fees collected by him by virtue of his office. Section 2904, St. Okla. 1890; section 14, art. 1, c. 25, p. 131, Sess. Laws 1895; section 14, c. 15, p. 167, Sess. Laws Okla. Ter. 1897; section 3005, Wilson's Rev. & Ann. St. 1903; section 3, art. 5, c. 27, p. 291, Sess. Laws Okla. 1907-08.

Section 11 of the act of Congress approved May 2, 1890 (Act May 2, 1890, c. 182, 26 Stat. 87), provides:

"That the following chapters and provisions of the Compiled Laws of the state of Nebraska, in force November first, eighteen hundred and eighty-nine, in so far as they are locally applicable, and not in conflict with the laws of the United States or with this act, are hereby extended to and put in force in the territory of Oklahoma until after the adjournment of the first session the legislative assembly of said territory, namely: The provisions of articles * * * of chapter twenty-eight, entitled 'Fees.' "

Section 8 of said chapter is as follows:

"The county judge for any service performed by him, in any matter within the jurisdiction of a justice of the peace, shall be allowed the same fees as are allowed by law to justices of the peace for like services, and in all civil actions triable in the county court of which a justice of the peace has not jurisdiction, the county judge shall be entitled to receive the following fees: Docketing each cause, twenty-five cents; appearance of parties, fifteen cents; taking affidavits, twenty-five cents; filing petition, answer, or any other pleadings or paper necessary in any cause, ten cents; for copying or entering in full on the docket, the petition, answer, or any other pleading necessary in any cause, one cent for each ten words thereof; taking and approving bond or undertaking, twenty-five cents; recording bond, for every ten words, one cent; administering oath or affirmation to witness, ten cents; for entering cause on calendar and setting same for trial, twenty-five cents; certificate and seal, twenty-five cents; issuing execution and entering return, seventy-five cents; filing and entering motion, fifteen cents; issuing subpœna and seal, fifty cents; commission on money collected on judgment without execution shall be one per cent. on the first two hundred ($200) dollars, one-half of cne per cent. on all amounts over * * * shall be allowed in addition to the fees herein allowed." ·

The first session of the Legislature of Oklahoma Territory practically re-enacted *ipsissimis verbis* these Nebraska Laws. *Ex parte Larkin,* 1 Okla. 53, 25 Pac. 745, 11 L. R. A. 418; *U. S. v. Pridgeon,* 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed 631. The only difference between said section 8 of chapter 28 on "Fees" of the Nebraska Laws and section 1645 of the statutes enacted by the first

session of the Legislature of Oklahoma Territory is that in the first line of said section the word "or" appears instead of "him."

Are we permitted to conclude that the Legislature intended to employ the word "him," but by inadvertence or clerical mistake inserted "or"? In the case of *State ex rel. Caldwell v. Hooker, County Judge,* 22 Okla. 712, 98 Pac. 971, the court said:

"It must be assumed that the Legislature could not have intended to have produced an absurd or unreasonable result, or to express itself in terms which would defeat the very objects of the enactment, and, when such effect would follow a literal construction of a statute, the conjunctive particle may be read as disjunctive, or *vice versa,* on the theory that the word to be corrected was inserted by inadvertence or clerical error."

The case of *Baca v. Bernalillo County,* 10 N. M. 438, 62 Pac. 979, involved the fees of tax assessors, and it was held that the word "uncollectible" was used for "collectible," and that where a word had been erroneously used in a statute for another and the context afforded the means of correction such word will be deemed substituted. In that case the court said:

"This is what is sometimes called exceptional construction and we are not unmindful of the dangers attending the exercise of such powers by the courts, but, properly understood, and exercised with due caution, it is not judicial legislation, but is simply a method of arriving at legislative intent defectively expressed, and the power and right are firmly established by authority."

The case of *Hooper & Nolen v. Burchfield et al.,* 115 Ala. 226, 22 South. 68, involved the construction of a statute which as enrolled and published employed the word "plaintiff," instead of the word "defendant." The court said:

"It is so entirely obvious, however, that the use of the word 'plaintiff' is the result of a clerical misprision, and that 'defendant' was intended, that the error corrects itself, and that the assumption upon which we have been proceeding is fully authorized and justified."

The following American courts in applying the rules of construction have held as hereinafter indicated: In *Rabun County v. Habersham County,* 79 Ga. 248, 5 S. E. 198, in the enrolled

act, the word "river" to have been used instead of "bridge" being manifestly a clerical error. In *White v. Rio Grande, W. R. Co.,* 25 Utah, 346, 71 Pac. 593, in section 5, art. 8, of the Constitution of that state, the word "business" to have been intended for the words "cause of action," and the latter substituted therefor. In *Lancaster County v. Lancaster City,* 160 Pa. 411, 28 Pac. 854, the word "county" which is the one hundred and eighteenth word in section 3 of the act of April 13, 1854 (P. L. 352), to be a clerical mistake for the word "city," apparent on the face of the act. In *County of Lancaster v. Frey,* 128 Pa. 593, 18 Atl. 478, with reference to the same act, that "a mere clerical error in an act of an assembly which involves a mistake and a manifest absurdity apparent on the face of the act may be corrected by the courts from the context, in order to carry out the clear purpose of the Legislature." In *Edwards v. Denver & R. G. R. Co.,* 13 Colo. 59, 21 Pac. 1011, that the word "issuing" was intended for "filing." In *Dickson v. C., B. & Q. R. Co.,* 77 Ill. 331, and *Von Campe et al. v. Chicago,* 140 Ill. 361, 29 N. E. 892, that the words "this section" should be construed as used for "this act." In *Gray v. County Commissioners,* 83 Me. 429, 22 Atl. 376, that in using the figures 49 in the act it was intended to employ the figures 48, and that they should be deemed as substituted therefor. See, also, *People v. Gaulter,* 149 Ill. 39, 36 N. E. 576; *Indiana & Ill. R. Co. v. People,* 154 Ill. 558, 39 N. E. 133.

If said section 1645 by a literal construction produces an absurd or unreasonable result, it then becomes necessary by utilizing the recognized rules of construction to determine the meaning of the Legislature. It is fair to presume that no Legislature would permit a probate judge to charge for any services except that performed by himself in such capacity, and that it was not the intention that such judge should also receive compensation for services performed by a justice of the peace. By substituting the word "him" for "or" in the first line, the absurd or unreasonable results would be obviated and the identical re-enactment of the Nebraska statute would follow. From the con-

text, and the history of said section, we conclude that the word "him" was intended to be employed instead of "or," which was evidently inserted by inadvertence or clerical mistake.

Section 8 of chapter 28 of the Statutes of Nebraska of 1889 is identical with section 9444, 2 Cobbey's Ann. St. Neb. 1909, p. 2845. In *Douglas County v. Vinsonhaler*, 82 Neb. 810, 118 N. W. 1058, the Supreme Court of that state held that said section did not give the right to the county judge to charge a fee for performing a marriage ceremony. In addition to that, the record shows that the practical construction by the administrative officers of the territory of Oklahoma from the time of its organization to the erection of the state was that no fee was provided by statute for a probate judge to charge for the performance of such ceremony. It also appears that such had been construed by the administrative officers of the state of Nebraska, whose duty it was to enforce the same, so as not to give the county judge the right to charge a fee for performing a marriage ceremony until the year 1907 when the Legislature expressly provided that such should be done. It is one of the rules of construction that, where the meaning of a statute is doubtful, long usage is a just medium by which to expound it. If a probate judge in the territory of Oklahoma, relying upon this usage, performed marriage ceremonies without charging fees therefor and accounting to the county for the same, if we were to conclude here that he was required under the law to make a charge for such services, he would probably become liable on his official bond for such unaccounted fees, and a holding made now contrary to the contemporaneous construction of this statute might work a great hardship and injustice upon such public officers. However, it is clear that, if a fee is not provided by statute, an officer is not permitted as a rule to collect one. In the brief of counsel for defendant in error the suggestion is made that, in the event one of the justices of the Supreme Court were to perform a marriage ceremony, there is no fee prescribed for the performance of such official act. True, and in such case such officer would be neither authorized nor justified in accepting a fee therefor. Public officers are only au-

thorized to accept fees for. public acts where the law either expressly or by implication authorizes the. charging of a fee.

In Throup on Public Officers (1892) sec. 478, p. 457, it is said:

"It results from the proposition, stated and illustrated in the last chapter, that an officer is not entitled to compensation, unless it is given to him by the Constitution or a statute; that where a compensation is thus given whether by salary or by fees, or by commissions, or otherwise, it is in full. of all his official services; and he is not entitled to demand or receive any additional compensation from the public or from an individual for any service within the line of his official duty, although his duties have been increased, or entirely new duties have been added, since he assumed office, or, if his compensation consists of fees, *although the service is one for which no fee is provided by law.* [Italics ours.]¹ And this proposition is declared and illustrated in numerous American authorities." (See authorities cited in footnote 2.)

In *State ex rel. Pollard v. Brewer, Auditor,* 59 Ala. 130, the late Chief Justice Brickell, in speaking for the court, said:

"The statutes which allow fees to sheriffs and other officers for services rendered in prosecutions by the state for criminal offenses, and in executing ·judgments rendered in such prosecutions, are statutes which give costs, and must be strictly construed. They cannot be extended beyond their letter. It is a principle of the common law that .such statutes (as it is in reference to all general statutes) do not extend to and embrace the sovereign, subjecting him to disability, · or to liability, unless it is so expressly provided. 'The king (and any person suing to his use) shall neither pay nor receive costs' was the rule at common law; and the general words of statutes giving costs did not include the sovereign. 2 Black. 400. The same principle has been applied to the governments, state and federal, 'in this country, in civil and criminal causes. * * * *Irwin v. Commissioners,* 1 Serg. & R. [Pa.] 505; *McKeehan v. Commonwealth,* 3 Barr .[Pa.] 151; *U. S. v. Boyd,* 5 How. 29 [12 L. Ed. 36]; *Commissioners v. Blake,* 21 Ind. 32; *Prince v. State,* 7 Humph. [Tenn.] 137."

The Alabama case announces the rule when the fee is sought to be collected from the state or municipal subdivision thereof. *People v. Supervisors,* 1 Hill (N. Y.) 362, and *Hatch v. Mann,*

15 Wend. (N. Y.) 44, support the rule as announced in section 478, Throup on Public Officers, *supra*, when the compensation of an officer consists of fees, although the service is one for which no fee is provided by law, such officer being not entitled to compensation for such services. In *People v. Supervisors, supra*, the court said:

"By charging the attorney (district attorney) with the duty of suing for fines, without making provisions for the payment of costs, the Legislature has, in effect, declared that the salary of the officer is to be deemed the compensation for these, as well as for other services. It is impossible for a salary officer to make title to an increased compensation, on the sole ground that a new duty has been cast upon him by the Legislature. * * * Whether the pay shall be increased with the burden is a question which addressed itself to the Legislature. The courts have nothing to do with it."

In *Hatch v. Mann, supra*, it is said:

"That a public officer whose fees are prescribed by law may maintain an action to recover an additional sum promised him by a party for doing his official duty is a monstrous proposition, fraught with every kind of mischief. The pretense that it is for extra services would cover any conceivable corruption or extortion."

See section 2, Senate Bill No. 1, relating to the compensation to certain county and district officers, passed at the extraordinary session of the Second Legislature, which provides that the county judge shall charge and collect a fee of $3 for solemnizing marriage ceremonies, the same to be accounted for to the county. See, also, section 40 of the same act, prohibiting officers from receiving any fee except as provided by law, and making same a misdemeanor punishable by fine and perpetual disqualification to hold office in this state.

Reaching the conclusion that there is no fee provided for the performing of marriage ceremony prescribed by statute, and that such officer is not permitted to make a charge therefor, it

follows that the relator was not entitled to the writ as prayed for by him.

The judgment of the lower court is affirmed.

All the Justices concur.