## WILLS *v.* GIBSON.

The lien of a judgment for arrears of ground-rent is not confined to the period limited by the act of 1798.

The twenty years which raise a presumption of payment of a judgment which had been confessed, "the amount to be ascertained by the prothonotary," does not begin to run until the amount has been ascertained.

The payment of a ground-rent by an assignee of the land, which accrued during his tenancy, does not raise a presumption of payment of the arrearages which accrued during the tenancy of his assignor, for which a judgment had been obtained.

IN error from the Common Pleas of Allegheny.

*Nov.* 8.. This was a *scire facias* to December Term, 1845, by the administrators of Wills, to revive a judgment for arrearages of ground-rent against the original defendant, with notice to the present *terre-tenant.*    Culbert, the *terre-tenant,* pleaded that the judgment was not a lien, and secondly, that she was a purchaser for valuable consideration, and the judgment was no lien.    It appeared that, in 1823, the administrators of Wills brought covenant for rent against James Gibson, assignee of John Gibson, who was the grantee of Wills, on ground-rent by deed, dated in 1814.    In the declaration, the plaintiffs claimed for two years' rent, amounting to $112, due in the lifetime of Wills, and for $42 accruing *subsequent* to his death.    Pleas were filed, and in March, 1825, judgment confessed by attorney, "sum to be liquidated by prothonotary, on five days' notice."    It further appeared from the record, that notice of the liquidation of the judgment had been served in 1832, whereupon the amount due was settled by the prothonotary as follows : "Debt per settlement made Nov. 7, 1825; $81 27½.    Interest from Oct. 25, 1825, to Jan. 1832, $30 57 : $111 84½."    Culbert, the *terre-tenant,* proved

she purchased the property in 1836. She further showed, that the guardians of the minor children of Wills had received several sums of money on account of rent, viz. $112 62, from James Gibson, between 1831 and 1833 ; from 1833 to 1837, $240 12; from 1838 to 1840, $140, from Gibson or Culbert, and from Mrs. Culbert several sums from 1843 to 1846. The plaintiff in rebuttal showed the administration account in 1832, in which credit was claimed on account of this judgment being unpaid.

The court, PATTON, J., left it to the jury to say, from all the circumstances in the case, whether the judgment had been paid ; but said, that at all events, it ceased to be a lien on the land of the *terre-tenant.*

*Wills,* for plaintiff in error.—The proceeding was to revive the judgment against Gibson personally, and incidentally to affect the land of the *terre-tenant,* for which purpose notice was proper: 3 Penna. Rep. 229 ; 16 Serg. & Rawle, 432. It is immaterial whether the parties were present or not at the liquidation of the judgment, which was a confession of the arrears being due at that time. The authority to the prothonotary, with the service of notice of his intended action, was equivalent to actual assent, and all things are to be presumed in favour of regularity. Behind this the court cannot go in a *scire facias :* the remedy is by motion. It was therefore a judgment unascertained as to amount, until that period, and from thence only can the presumption commence running. The error the court fell into was in considering the two liens as distinct, which, so far as regards the present case, they are not. There is no limitation of the lien of arrears of ground-rent, saving the presumption of payment ; and this is emphatically rebutted by the judgment. That gave no greater lien on the land ; it is but a means of enforcing the prior lien, like a judgment on a *scire facias sur mortgage.* At the time of the confession of that judgment, the arrears being admitted by matter of record to be unpaid, the land is liable for them, and the proper method to enforce that liability is by proceeding upon that judgment.

*Williams* and *McCandless,* contrà, referred to Levers *v.* Van Buskirk, 4 Barr, 309 ; Commonwealth *v.* Baldwin, 1 Watts, 54; Taylor *v.* Megargee, 2 Barr, 225; Tilghman *v.* Fisher, 9 Watts, 445 ; Brady *v.* Colhoun, 1 Penna. Rep. 140 ; St. Mary's *v.* Miles, 1 Whart. 229.

*Nov.* 29. GIBSON, C. J.—The points of defence taken by the

*terre-tenant*, who is the substantial party, were payment of the judgment and expiration of its lien. As to the latter, it is enough that the lien arose, not from the judgment for the arrears, but from the ground-rent deed; and, consequently, that it was not subject to the provisions of the act of 1798. A judgment for such arrears, like a judgment against an administrator, creates no new lien; but the lien of a ground-rent, unlike the lien of the intestate laws, is not limited in its duration by positive enactment: and the *terre-tenant* was consequently thrown upon his plea of payment. The evidence to maintain it, was a legal presumption from lapse of time, and also from payment of subsequent arrears; either of which was supposed to be sufficient to raise it. The first question for the court had regard to the point of time from which the presumption from lapse had begun to run. It had originally started at the instant when the arrears fell due; but it was arrested in its course by the confession of judgment in the action of covenant on the ground-rent deed, which conclusively established that the debt had remained till then unpaid : yet had that judgment been final, or, in other words, for a definite sum, the period to found the presumption would have taken a new start from the date of it. But the sum was, by the terms of the confession, to be liquidated by the prothonotary on notice; and before that was done, a new period could not begin. These presumptions are legal inductions of fact from violent probabilities, founded by experience in the usual current of human actions in similar circumstances; and they are not entertained when they would lead to conclusions contrary to the usual course of events, or to establish a fact in itself improbable. Now it would be contrary to all experience to presume that a debtor had paid what he could not safely pay; and had the defendant undertaken to pay the judgment before the amount of it was ascertained, he would have been in danger of paying too much. Voluntary payments are tardily made, even in the clearest cases of fixed liability—they are never made while any thing remains to be adjusted. The defendant's disregard of the notice to liquidate, was equivalent to an admission that he had no credits to claim; for a judgment in default of appearance at the proper time, is as conclusive in its consequences as if the party had actually appeared and made an unsuccessful defence. By the prothonotary's liquidation, the judgment which had been before interlocutory, became final, and estopped the defendant, and his subsequent privy in estate, from denying that the debt had theretofore been unpaid. It was in effect a new judgment, and the date of it was within twenty

years of the suing out of the *scire facias*; consequently, as no foundation for the legal presumption of payment was found in that quarter, the *terre-tenant* was compelled to seek for it elsewhere; and he had recourse to certain receipts for his own payment of arrears, incurred long afterwards, when he had become debtor in respect of his ownership of the fee. But though a receipt for rent due at one time affords a presumption that the rent previously due had been paid, it would be unreasonable to extend it to rent for which the tenant was not himself primarily liable. It is so weak, at best, that it may be blown away by any breath of opposition. It is founded on a supposition that the tenant, in the run of such transactions, usually first pays what is first due; but when it is his interest to have his payment applied to those arrears for which alone his landlord can distrain, or has a right to priority of satisfaction out of his chattels sold on execution, he will be very apt to exercise his incontrovertible right of appropriation. The very assumption of the practice is a fallacy; but I will not say that the presumption usually drawn from it is not founded in authority. It may hold in the case of an undivided liability for an entire period; but where there are different paymasters of different arrears, the presumption is, that each pays no more than what he is debtor for between themselves. The landlord's volition enters not into the question, for he is bound to receive what is tendered, at the peril of losing interest, and to appropriate it as the tenant directs. In these particulars the charge had a tendency to mislead.

Judgment reversed, and *venire de novo* awarded.