CASE 5—PENAL ACTION BY COMMONWEALTH AGAINST J. H. TRENT AND OTHERS FOR FAILING TO PLUG GAS WELLS IN THEIR POSSESSION, AND PERMITTING THE GAS TO WASTE.—DEC. 9.

# Commonwealth v. Trent & Others.

APPEAL FROM MEADE CIRCUIT COURT.

FROM A JUDGMENT OF DISMISSAL ON DEMURRER, THE PLAINTIFF APPEALS. REVERSED.

NATURAL GAS—PREVENTION OF WASTE—LEGISLATIVE CONTROL—PLUGGING WELLS—CONSTRUCTION OF STATUTES—LEGISLATIVE INTENT—EVASION OF STATUTE.

Held: 1. Acts 1891-93, pp. 60, 61 (Kentucky Statutes, 1899, sections 3910-3914) provide (1) for the confinement of gas in wells until its utilization; (2) for the plugging of abandoned wells; (3) that landowners adjacent to wells, the owners of which fail to comply with section 1, may enter on their lands and plug the wells; (4) that owners of land adjacent to abandoned wells may enter and plug them; (5) declare an emergency, on account of the number of abandoned wells in the State. HELD, that since sections 2 and 5 provide expressly and sufficiently for abandoned wells, and sections 1 and 4 are not so limited, those latter sections provide for wells not abandoned, although the emergency was declared to exist only as to abandoned wells.

2. Acts 1891-93, pp. 60, 61 (Ky. Statutes, 1899, sections 3910-3914), enacted for the purpose of preventing the waste of gas, provide, in section 1, that owners, etc., of gas wells, shall confine the gas until such time as it shall be utilized, and in section 4 that owners of lands adjacent to unplugged wells may enter and plug the wells if their owners neglect to do so. Abandoned wells are provided for in sections 2 and 5, and section 4 makes no provision for a well that is shut in, the gas escaping from another point than the well itself. HELD, that section 1, being broader than section 4, imposes a duty on the owners to confine the gas, irrespective of the point of its escape, and such owners are liable for permitting gas to escape through pipes at a point other than the well, independently of the liability imposed by section 4 for permitting the gas to escape at the well.

Commonwealth v. Trent and Others.

3. Under Kentucky Statutes, 1899, sections 459, 460, providing that statutes shall be construed to effectuate legislative intent, and providing for a liberal construction, in the light of the common and approved usage of language, except in the case of technical words and phrases, penal enactment must be construed as other statutes, with a view to carrying out the intention of the Legislature; all untechnical words and phrases being construed according to the common and approved use of language.

4. In construing a statute, the court will look to the whole act, and the purpose of the makers in its enactment.

5. Under Acts 1891-93, pp. 60, 61 (Kentucky Statutes, 1899, sections 3910-3914), enacted for the prevention of the waste of gas, and enjoining the plugging of wells not in use, it can not be contended that the owners of wells may do as they please with gas after reduced to possession by them, for the gas coming from the gasometer is replaced by other gas coming from the well.

6. Acts 1891-93, pp. 60, 61 (Kentucky Statutes, sections 3910-3914), enacted for the prevention of the waste of gas, and enjoining the plugging of wells not in use, was within the legislative power to enact, as a protection of the natural resources of the State, to the rights of the public in which the rights of individual owners are subject.

J. D. HARDIN AND J. W. LEWIS, ATTORNEYS FOR APPELLANT.

We contend:

1. That in construing the statute in controversy herein, its provisions are to be liberally construed with a view to promote its object, which was to prevent the waste of natural gas.

2. Even if the strict construction required by the common law be applied, under the allegations of the petition as amended, the defendants are liable to the penalty prescribed by the statute.

We contend that the defendant violated the latter as well as the spirit of the statute, if the averments of the petition be true.

The intention of this enactment was to require such products as natural gas to be confined in the wells until utilized, to prevent its being wasted.

Whether this gas was permitted by appellees to escape from the gasometer into the air, or was burned by them in the pretended manufacture of lamp black, can not, in the slightest degree, affect the question of their guilt, because it could not have been piped into the gasometer if they had violated the statute by failing to confine it in the well.

The contention of appellees that if they permitted the gas to escape into the air they would have been guilty, but as they burned it, it was not *wasted by escape*, is neither sound, logical or reasonable.

The object of the statute is to prevent the *waste* of natural gas. The title of the act so states. The defendants admit, by the demurrer, that such was their object, in spite of the law, and this court is asked to hold that because they allowed it to run through a few hundred feet of pipe into what they call a gas holder and then burned it in a pretended manufacture of lamp black, it is not a waste, because it did not escape from the well. Such a contention is to say that the law is not only blind, but imbecile, and can be cheated by the shallowest device.

### AUTHORITIES CITED.

Revised Statutes, vol. 1, ch. 21, secs. 15, 16, 17; General Statutes, ch. 21, secs. 15, 16, 17; Kentucky Statutes ch. 100, secs. 3910-3912; Kentucky Statutes, secs. 459-460; Com. v. Gale, 10 Bush, p. 488; Bailey v. Com., 11 Bush, p. 688; Com. v. Davis, 12 Bush, p. 242; Williams v. Com., 78 Ky., p. 93; Barbour v. City of Louisville, 83 Ky., p. 95, also see 192; Sutton v. Sutton, 87 Ky., p. 216; Bird & Co. v. Board of Com. of Kenton Co., 95 Ky., p. 195; Leonard & Co. v. Braswell, etc., 99 Ky., p. 539.

HUMPHREY, BURNETT & HUMPHREY, for APPELLEES.

### PROPOSITIONS AND AUTHORITIES.

The only question in this case is the construction of the act of May 14, 1892, reproduced (except the important section 6) in Kentucky Statutes, chapter 100, "Petroleum, Natural Gas and Salt Water Wells."

This act makes it unlawful to permit gas to waste by escape from the well. It can not bear the interpretation urged by the Commonwealth, viz., an act making it unlawful for one to waste, by burning gas which he has first made his absolute property by piping into a gasometer.

1. The construction above stated as correct,

(1) Gives to the words of the statute their plain meaning "according to the common and approved use of language."

(2) It carries out liberally the Legislature's intention, which is apparent in the sections defining the offense, but is shown

Commonwealth v. Trent and Others.

so as to leave no room for doubt when the whole act is read together.

(3) Appellant's construction leads to many absurdities.

(4) Appellant's construction expands the statute in a manner which its language does not permit.

(5) The adoption of appellant's construction would be in effect the enactment by the judiciary of an *ex post facto* law. Campbellsville v. Odewalt, 24 Ky. Law Rep., 1739.

.2. This being a penal statute, must be strictly construed. This rule of construction is still in force in Kentucky. McMasters v. Burnett, 92 Ky., 358; Louisville Courier-Journal Co. v. Com., 13 Ky. Law Rep., 341; L. & N. R. R. v. Com., 22 Ky. Law Rep., 335-6; Com. v. L. & N. R. R., 23 Ky. Law Rep., 1986; Jacob v. Clark, 24 Ky. Law Rep., 2120.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

This is a penal action instituted by the Commonwealth against appellees. The court sustained a demurrer to the petition, and dismissed the action. The only question on the appeal is whether the facts stated constitute a cause of action. It is averred in the petition that the defendants conspired and confederated together for the unlawful purpose of obtaining and wasting natural gas from lands embraced in the gas belt of Meade county, Ky.; that, to effectuate and carry out this purpose, they bored six wells in this gas belt, four of them proving to be fine, producing gas wells, and yielding about 600,000 feet of gas per day; that these wells were in the possession and under the absolute control of the defendants, either as owners, agents, or managers, and that the defendants, under the pretense of manufacturing lampblack, but really with the unlawful purpose to waste the gas and destroy the gas territory in Meade county, Ky., willfully and maliciously burned and wasted all of the gas from the four wells after it had been piped into a general tank or gasometer from the —— day of December, 1901, to the 14th day of June, 1902, in violation of the rights of the owners of the gas land,

and contrary to the provisions of the statute.      It is also alleged that the wells were not utilized by the defendants within three months after they were bored, nor shut in so as to prevent the product from wasting by escape, but that the defendants suffered and permitted the gas to escape and waste as above set out.      It is insisted for the appellees that the facts stated make out no cause of action under the statute, for the reason that it is not charged that the gas was allowed to waste by escape at the well, and that the Legislature did not mean to make criminal the use by the citizen of his own property, even though that use brought him no pecuniary profit or was unwise.      On the other hand, it is insisted for the state that, if the defendants willfully and maliciously wasted the gas, the form in which they did so is immaterial, under the statute.      The question turns upon the proper construction of the act, which is as follows:      "An act to prevent the wasting of petroleum, natural gas, salt water, and to provide for the plugging of all abandoned wells.      "Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Section 1. That from and after the passage of this act, any person or corporation, and each and every of them, in possession, whether as owner, lessee, agent or manager, of any well in which petroleum, natural gas or salt water has been found, shall, unless said product is sooner utilized, within a reasonable time, not, however, exceeding three (3) months from the completion of said well, in order to prevent said product wasting by escape, shut in and confine the same in said well until such time as it shall be utilized: provided, however, that this section shall not apply to gas escaping from any well while it is being operating as an oil well, or while it is used for any fresh or mineral water.

"Section 2. That whenever any well shall have been put down for the purpose of drilling or exploring for oil, gas or salt water, upon abandoning or ceasing to operate the same, the person or corporation in possession as aforesaid shall, for the purpose of excluding all fresh water from the gas-bearing rock and before drawing the casing, fill up the well with sand or rock sediment to the depth of at least twenty (20) feet above the rock which holds the oil, gas or salt water, and drive a round seasoned wooden plug, at least three (3) feet in length, equal in diameter to the diameter ing the casing shall drive a round seasoned wooden plug, at a point just below where the lower end of the casing rests, which plug shall be at least three (3) feet in length, tapering in form, and of the same diameter, at the distance of eighteen (18) inches from the smaller end, as the diameter of the hole below the point at which it is to be driven. After the plug has been properly driven, there shall be filled on top of the same sand or rock sediment to the depth of at least five (5) feet.

"Section 3. Any person or corporation who shall violate any of the provisions of the first or second sections of this act shall be liable to a penalty of one hundred dollars ($100) for each and every violation thereof, and the further penalty of one hundred dollars ($100) for each thirty (30) days during which said violation shall continue; and all such penalties shall be recovered, with costs of suit, in the name of the state, for the use of the county in which the well shall be located.

"Section 4. Whenever any person or corporation in possession of any well in which oil, gas or salt water has been found, shall fail to comply with the provisions of the first

section of this act, any person or corporation lawfully in possession of lands situate adjacent to or in the neighborhood of said well, may enter upon the lands upon which said well is situated, and take possession of said well from which oil, gas or salt water is allowed to escape, or waste, in violation of said first section, and tube and pack said well, and shut in said oil, gas or salt water, and may maintain a civil action in any court of this state against the owner, lessee, agent or manager of said well, and each and every of them, jointly and severally, to recover the cost thereof. This shall be in addition to the penalties provided by the third section of this act.

"Section 5. Whenever any person or corporation shall abandon any well, and shall fail to comply with the second section of this act, any person or corporation lawfully in possession of lands adjacent to or in the neighborhood of said well, may enter upon the land upon which said well is situated, and take possession of said well, and plug the same in the manner provided by the second section of this act, and may maintain a civil action in any court of this State against the owner or person abandoning said well, and every of them, jointly and severally, to recover the costs thereof. This shall be in addition to the penalties provided by the third section of this act; provided this section shall not apply to persons owning the lands on which said well or wells are situated and drilled by other parties; and in case the person or corporation drilling said well or wells is insolvent, then, in that event, any person or corporation in possession of lands adjacent to or in the neighborhood of said well or wells, may enter upon the land upon which said well or wells are situated and take possession of said wells, and plug the same, in the manner

provided for in the second section of this act, at their own expense.

Section 6. Inasmuch as large quantities of petroleum, natural gas and salt water are now flowing to waste in this state from wells which have been abandoned and never plugged up, and inasmuch as the said waste is likely to be greatly increased by developments now in progress, therefore an emergency exists; and on account of such emergency, this act shall take effect and be in force from and after its passage."

Acts 1891-93, pp. 60-62 (Ky. Stats., 1899, secs. 3910-3914).

It is argued with much force that as by section 4 the adjoining owner is allowed to take possession of and plug up any well from which gas is allowed to escape by waste, and as by section 6 the act is made to take effect from its passage, because of the gas then flowing to waste from wells which had been abandoned and never plugged up, the whole act applies only to abandoned wells, or those left open, and not waste of gas elsewhere than at the well.    Sections 2 and 5, by their terms, apply to abandoned wells, and the existence of these abandoned wells is the reason given in section 6 for making the act take effect from its passage; but sections 1 and 4 are not by their terms limited to abandoned wells, and, as abandoned wells are fully provided for in sections 2 and 5, it must be concluded that in sections 1 and 4 the Legislature was providing for wells that were not abandoned.    The fact that certain cases were deemed by the Legislature a sufficient reason for making the act take effect from its passage does not show that only these cases were intended to be remedied.    Nor does the fact that a remedy is given in a certain class of cases to the owners of the adjacent land indicate that appellees might not be liable in another class of cases for the penalty of wasting the gas under

section 1. Section 4 applies only to a well "from which oil, gas or salt water is allowed to escape or waste," and, from its phraseology, applies only to waste at the well or to wells left open. It does not apply to abandoned wells, for these are provided for by section 5; nor does it apply to any well that is shut in, for the adjoining owner is authorized by the section to "tube and pack said well, and shut in said oil, gas or salt water." The section does not contemplate that the adjoining owner may commit a breach of the peace, or take possession of a well which is shut in, and from which the gas is piped to another point. But section 1 requires that every person in possession as owner, lessee, agent or manager of any well in which petroleum, natural gas, or salt water has been found "shall, unless said product is sooner utilized, within a reasonable time, not, however, exceeding three months from the completion of said well, in order to prevent said product wasting by escape, shut in and confine the same in said well until such time as it shall be utilized." This section looks to be the utilizing of the product of the wells. It requires the product to be shut in and confined in the well until such time as it shall be utilized, in order to prevent its wasting by escape. The person in possession of a well, who fails to shut in and confine the product in the well until such time as it shall be utilized, violates the letter of the statute, regardlessly of how the product may be destroyed after its escape from the well, for, if the product is confined in the well until such time as it shall be utilized, as required by the statute, it can not be wasted in any way, and to allow it to waste by escape in any way is not to shut it in or confine it in the well until such time as it may be utilized. Section 4 applies only to wells from which the gas is allowed to escape, but section 1 is not limited to waste at the well,

Commonwealth v. Trent and Others.

and is violated if the gas is not confined in the well until such time as it may be utilized. Section 1 is much broader than section 4, which covers only a part of the ground covered by section 1. If the gas is confined in the well until such time as it may be utilized, it can not escape from the well; but it may not escape from the well, and yet waste by escape elsewhere, if not confined in the well until it is utilized. The words "wasting by escape" are very broad, and apply equally whether the escape is at the well, or at the end of a pipe leading off from the well. The statute must be given a reasonable construction, with a view to the mischief intended to be reached. The purpose of the act is to prevent the waste of the natural products referred to, and if the defendants maliciously and willfully wasted and intended to waste the gas from their wells, it is immaterial whether they suffered the gas to escape at the well, or piped it off to another place, and there allowed it to escape.

It is well known that the supply of gas is limited, and may be exhausted. The act is intended to protect the supply from waste. Under the act, it is conceded, a person, to exhaust the supply of his neighbor, can not put down wells on his own land, and allow the gas to escape from the well. To allow him to pipe it off a short distance from the well, and let it escape, would be to sustain an evasion of the statute. And if he went through the form of burning it, but simply for the purpose of wasting the gas, and as a pretense to evade the statute, this, too, would not affect his liability.

The defendants had the right to use the gas in any sort of lawful business done or attempted to be done in good faith, but, if the use of the gas was a mere pretext for wasting it, they are none the less responsible than they would have been if they had allowed it to escape at the well.

By sections 459-460, Ky. Stats., 1899, it is provided: "There shall be no distinction in the construction of statutes between criminal or civil or penal enactments. All statutes shall be construed with a view to carry out the intention of the Legislature." Section 459. "The rule of the common law that statutes in derogation thereof, are to be stricctly construed, is not to apply to this revision; on the contrary, its provisions are to be liberally construed with a view to promote its objects.   All words and phrases shall be construed and understood according to the common and approved usage of language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such meaning."   Section 460.

These are the provisions of "An act concerning construction of statutes," approved December 3, 1892, enacted by the same Legislature as the act in question.   See Acts 1891-93, p. 372.   This act materially changes the common-law rule as to the interpretation of statutes.   It was within the competency of the Legislature to enact the statute, and it is incumbent on the judiciary to enforce it. Under it, penal enactments must be construed, as other statutes, with the view to carry out the intention of the Legislature, and all untechnical words and phrases must be construed according to the common and approved usage of language. This has been often announced by the court, and there is nothing in the cases relied upon for appellees. (McMasters v. Burnett, 92 Ky., 358, 13 R., 617, 17 S. W., 1021; L. & N. R. Co. v. Com., 23 R., 1900-1986, 66 S. W., 505) that was intended to conflict with the provisions of the statute which is the law of the State. Commonwealth v. Gale, 10 Bush, 488; Bailey v. Commonwealth, 11 Bush, 688; Commonwealth v. Da-

vis, 12 Bush, 242; Williams v. Commonwealth, 78 Ky., 93. The common-law rule as to the strict construction of penal statutes has in modern times been much relaxed. In Endlich on Interpretation of Statutes, section 329, it is said: "A court is not at liberty to put limitations on general words which are not called for by the sense or the objects of the mischiefs of the enactment; nor to so narrow the construction as to exclude cases which the words of the statute, in their ordinary acceptation and plain meaning, or in the sense in which the Legislature obviously used them, would comprehend; and no construction is admissible which would sanction an evasion of an act, or would defeat the obvious intention of the Legislature. In order to avoid such a result, as has been seen, it is even allowable to reject what is clearly surplusage in an act.    It is true that a penal law must be construed strictly and according to its letter.    But this strictness, which has run into an aphorism, means no more than that it is to be interpreted according to its language."    It is true that the Legislature, not the court, must define crime, and ordain its punishment.

The intention of the Legislature is to be collected from the words employed, but, in construing a statute, as in the case of other instruments, the court will look to the whole act, and the purpose of its makers in its enactment.    The court can not depart from the plain meaning of the words in a penal act, and adjudge that punishable under the statute which its language does not fairly cover.    U. S. v. Wiltberger, 5 Wheat. 95, 5 L. Ed., 37.    But in determining what may be punished under the words of a statute, the court must apply the rule that every statute shall be construed liberally, with a view to carry out the intention of the Legislature and promote its objects, taking all ordinary words and phrases according to the common and approved use of language.

In the case before us it was incumbent on the appellees, under the express language of the statute, to confine in their wells the product until such time as it should be utilized and, if they violated this provision of the act, they became liable to its penalties. They did not confine the products in the wells if they piped it off and allowed it to waste by escape. The case therefore falls within the words of the statute, as well as its spirit and purpose. It must be presumed that appellees knew the law, and, when they knew that they could not leave their wells open, and thus exhaust the supply, they can not be allowed, as alleged, willfully to accomplish the same result by piping it away from the well, not for the purpose of utilizing it, but as a pretext to avoid the statute, and thus willfully to destroy the gas, notwithstanding its provisions. To hold such a state of facts not within the statute would be to allow a mere evasion to defeat it, and to so limit its application as practically to destroy it.

The position that the defendants may do what they please with the gas after it is reduced to possession by them can not be maintained. For, as the gas goes out of the gasometer, its place is taken by other gas coming from the well. Property is the creation of law. The use of property may be regulated by law. The Legislature may protect from waste the natural resources of the state, which are the common heritage of all. The right of the owner of property to do with it as he pleases is subject to the limitation that he must have due regard for the rights of others. To allow the storehouse of nature to be exhausted by the waste of the gas would be to deprive the state and its citizens of the many advantages incident to its use. That the Legislature may prevent this is well settled. Ohio Oil Co. v. Indiana, 177 U. S., 190, 20 Sup. Ct., 576, 44 L. Ed., 729; State v. Ohio Oil Co., (Ind.)

49 N. E. 809, 47 L. R. A. 627; Donahue on Petroleum and Gas, section 23.

Judgment reversed and cause remanded for further proceedings consistent herewith.