STATE OF IOWA, Appellant, v. C. F. CLAIBORNE, Appellee.

**STATUTES:** Judicial Insertion of Words. Construction may not be carried to the extent of so inserting a word in an affirmative statute as to render it a negative statute, even though the court may, *aside the statute*, believe that the latter meaning was the one intended by the legislature. So held where the statute provided that an automobile light, at a point 75 feet in advance of the machine, *should* rise above 42 inches from the level surface upon which the vehicle was standing.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

JANUARY 17, 1919.

DEFENDANT was informed against and accused of the crime of operating a motor vehicle without proper lights. He appealed to the district court. The trial court found defendant not guilty, and the State appeals.—*Affirmed.*

*H. M. Havner,* Attorney General, and *Ward C. Henry,* County Attorney, for appellant.

*Stipp, Perry, Bannister & Starzinger,* for appellee.

PRESTON, J.—The information charges, substantially, that defendant operated upon the streets of Des Moines, at a time more than one hour after sunset, a motor vehicle, with a lighting device thereon of over four candle power,

equipped with a reflector so arranged that the directly reflected and undiffused beam of light therefrom, when measured 75 feet ahead of the light, did not rise above 42 inches from the level surface on which the vehicle was standing and being operated, under all conditions of load.

The defendant made the following admission of record:

"Mr. Bannister: This cause coming on for trial, the defendant admits that, on the date and at the time and place in question, he was operating an automobile in the city of Des Moines, Iowa, with the headlight lighted, and so adjusted and arranged that the direct and undiffused beam or ray of light therefrom, when measured 75 feet ahead of the machine, was less than 42 inches above the ground on the level on which the machine was standing and being operated; and that the said headlight was of more than four candle power."

And upon said admission, the State rested. The defendant introduced witnesses, who testified, substantially, to large experience in driving motor cars and in using headlights of different cars; that most headlights have been equipped with reflectors, so as to concentrate the light in one beam, so it will light up one spot, the light being in front of or in a concave reflector; that, where there is a plain glass in front of the light, the ray that comes from the light is called undiffused, or a direct beam; that, if the light is so arranged that it shoots up more than 42 inches from the ground, it will, in nearly every case, blind one who is approaching on the road so that he cannot see the road ahead; if this direct beam of light is down below 42 inches, it would not have as bad an effect on the driver approaching; if it is directed down, it strikes the ground, and does not reflect in one's eyes; the center of headlights on automobiles run from 30 to 36 inches from the ground; there are prism lights made which tend to diffuse the beams from a headlight; the larger portion of them, when prop-

erly installed, diffuse the light so that it is possible to drive against them without bothering one meeting them, to any great extent; this is called a light that has a diffused ray, or a diffused beam. There are corrugated lights in a number of different forms, some colored and frosted, and a glass prism crosses the rays of light,—or breaks them up, as some of the witnesses put it; and, as they cover a large area, rather than a direct beam in front of you, they will not extend or penetrate so far ahead, but do not reach one and blind him in meeting it. There are some lenses on the market made so that, when a light is deflected down, so that it is only 42 inches from the ground, 75 feet ahead of the machine it will throw a light as far down the road as an undeflected beam; quite a number of cars are equipped with dimmers,—that is, two lights in the reflector, a small light and a large one. A headlight of from 16 to 40 candle power, with an ordinary reflector and globe, so arranged as to strike the road a long way ahead, if more than 42 inches above the ground, will practically blind a driver approaching; it is very annoying, and might be very dangerous.

One of the experts was asked:

"Q. Now, what would you say, as a man of experience in the operating and handling of automobiles, of the effect of a statute which apparently required all automobile drivers to shoot a direct ray of light up above 42 inches from the ground? A. I think it would be very dangerous. Q. In your opinion, would anyone who was drafting a statute for the purpose of benefiting the road laws, or making a proper adjustment and operation of automobile lights at night, make or enact such a provision into the law that the lights and direct rays of light should be shot up above 42 inches,—would there be any object and reason for passing such a rule? A. No, sir. Q. State whether or not that is the very evil which is complained of. A. It is. Q. State whether or not that is the very evil which any remedial

statute would be calculated to remedy. A. I think so. More than 42 inches is calculated to strike the eyes of a driver approaching in a car; that is about the average height of a driver's eyes, 3 feet, 6 inches."

Defendant introduced the original House File No. 131 (37 G. A.), as follows:

"House File 131. A bill for an act to amend Section fifteen hundred seventy-one-m-seventeen, Supplement to the Code, 1913.

"Section 1. That Section fifteen hundred seventy-one-m-seventeen, Supplement to the Code, 1913, be and the same is hereby amended by striking out the period at the end of said section, and substituting therefor the following:

" 'Provided, however, that it shall be unlawful for any person operating a motor vehicle upon the public highway in this state to use any lighting device of over four candle power, equipped with a reflector, unless the same shall be so designed, deflected or arranged that (no part of the beam of the reflected) light, when measured seventy-five (75) feet or more ahead of the light shall raise above forty-two (42) inches from the level surface on which the vehicle stands under all conditions of load.' "

Also the Senate Amendment thereto, as follows:

"I move to amend H. F. No. 131 by striking out all after the word 'that' in line eleven, down to and including the word 'reflected' in said line of Section one, and inserting the words 'the directly reflected and undiffused beam of such.' "

The statute as it stands (Ch. 148, Acts of the Thirty-seventh General Assembly), and for a violation of which the defendant is accused, reads:

"That section fifteen hundred seventy-one-m-seventeen, Supplement to the Code, 1913, be and the same is hereby amended by striking out the period (.) at the end of said section, and substituting therefor the following:

"; provided, however, that it shall be unlawful for any person operating a motor vehicle upon the public highway in this state to use any lighting device of over four candle power, equipped with a reflector, unless the same shall be so designed, deflected or arranged that the directly reflected and undiffused beam of such light, when measured seventy-five feet or more ahead of the light shall arise above forty-two inches from the level surface on which the vehicle stands under all conditions of load. Spot lights shall not be used so as to throw direct rays in the face of an approaching vehicle."

The trial court construed this statute so as to read into it the word "not," so that it would read: "The light shall *not* rise above forty-two inches," etc.

It is contended by the State that it is not admissible to speculate on what a statute might mean, beyond the import of the words used, citing *Gardner v. Collins*, 2 Peters (U. S.) 58, 92 (7 L. Ed. 347), from which they quote this:

"What the legislative intention was, can be derived only from the words they have used; and we cannot speculate beyond the reasonable import of these words. The spirit of the act must be extracted from the words of the act, and not from conjectures *aliunde.*"

They say, too, that the justice and policy of statutes enacted by the legislative department of the government are not matters for the consideration of the courts of the state. *Burlington, C. R. & N. R. Co. v. Dey*, 82 Iowa 312, 344, from which they quote as follows:

"Much is said in argument attacking the justice and policy of the statutes. With these things we have nothing to do. They are for the consideration of the legislative department of the government alone."

They cite, also, *Atlantic Coast Line R. Co. v. Finn*, 195 Fed. 685, 688; from which they quote:

" 'It is not for the court to inquire or determine whether

a state of facts existed calling for the enactment of the legislation in question. That is for the exclusive consideration of the legislature. If, under any possible state of facts, the act would be constitutional and valid, the court is bound to presume that such condition existed.' "

The State says that the literal construction of a statute may defeat the objects of the act, and quote from another case that it is better to abide by this consequence than to put upon it a construction not warranted by the words of an act, in order to give effect to what we suppose to have been the intention of the legislature. The argument is that the language of the statute is perfectly plain; that it declares certain acts to be a public offense, and as criminal in their character; that the rule is that such statutes should be strictly construed, and not to change the wording by adding to or taking from. They say, too, that, in construing a statute, the rule is that it is necessary to consider the context, or setting, and the presumption is that the words should be given their usual and ordinary meaning and significance. They concede that the object of all interpretation and construction of a statute is to ascertain and carry out the intention of the legislature, and that it is only when the act is of doubtful or ambiguous meaning that the province of a construction or interpretation begins, because it is a maxim of interpretation that it is not permitted to interpret what has no need of interpretation.

These rules are not disputed by appellee, but they rely on other principles as well. It is argued by appellee that the legislature intended to correct the abuse in the use of blinding headlights on automobiles on the public highway, and that defendant was using a proper light, and was complying with the spirit and intent of the statute; and further, that there is a clerical error in the statute, which the court can correct. Numerous cases are cited; but we shall not discuss them all, but state their propositions. They cite

*McBride v. McBride,* 142 Iowa 169, 179, *City of Cherokee v. Illinois Cent. R. Co.,* 157 Iowa 73, *Engvall v. Des Moines City R. Co.,* 145 Iowa 560, *Flam v. Lee,* 116 Iowa 289, to the point that, in construing instructions to juries, where they are manifestly wrong, and state the opposite of that intended, but the error could mislead no one as to what was intended, they are not held to be erroneous.

They cite *United States v. Ninety-Nine Diamonds,* 139 Fed. 961, and *Commonwealth v. Trent,* 117 Ky. 34 (77 S. W. 390), to the proposition that the object which the legislature sought to obtain by a statute, and the evil which it endeavored to remedy, may always be considered, to ascertain its intent and interpret its act. Other cases are cited, to the proposition that statutes must be so construed as to give effect to the evident legislative intent, though the result seems contrary to rules of construction and the strict letter of the statute, and that surrounding circumstances and the ends intended to be accomplished should be considered. *Voelker v. Chicago, M. & St. P. R. Co.,* 116 Fed. 867, *Chicago, M. & St. P. R. Co. v. Voelker,* 129 Fed. 522 (70 L. R. A. 264), are cited to sustain the proposition that statutes, the principle of which is to protect the lives and limbs of men, are so construed as to prevent the mischief and advance the remedy, so far as the words fairly permit. They concede that the context should be considered in interpreting a statute. *White v. Rio Grande W. R. Co.,* 25 Utah 346 (71 Pac. 593), 2 Lewis' Sutherland on Statutory Construction (1st Ed.), Section 260, 17 Am. & Eng. Encyc. of Law 19, 20, and *Comfort v. Kittle,* 81 Iowa 179, are cases cited on the proposition that it is a rule of statutory construction that, where one word has been erroneously used, if another, or a word omitted, and the context afford the means of correction, the proper word will be deemed substituted or supplied. In the case of *County of Lancaster v. Frey,* 128 Pa. 593 (18 Atl. 478), the word "county" was inserted in a stat-

ute for "city." In *Graham v. Charlotte & S. C. R. Co.*, 64
N. C. 631, the word "venire" in a statute relating to actions
against railroads was construed to mean "venue." In
*Moody & Perkins v. Stephenson,* 1 Minn. 401, all "penal"
judgments construed to mean all "final" judgments. In
*Palms v. Shawano County,* 61 Wis. 211, the word "north"
was read into a description in a statute, instead of "south."
In *Frazier & Delliner v. Gibson,* 7 Mo. 271, where a statute
provided that an obligor or maker of a note should be al-
lowed every just set-off and discount against the assignee
or assignor before "judgment," it was held that the word
"judgment" was evidently inserted by mistake. In *Hutch-
ings v. Commercial Bank,* 91 Va. 68, *Ashby v. State,* 124
Tenn. 684 (139 S. W. 872), and *State v. Louisville & N. R.
Co.,* 97 Miss. 55 (53 So. 454, 455), where it appeared
that a statute would fail to effectuate the purpose intended,
or any purpose, and that it had been omitted by mistake,
the word "not" was construed into the statute.

Appellant does not contradict these propositions, except
in so far as the cases heretofore cited by them do so.

The trial court, in an opinion filed, conceded that courts
could not amend a statute, as they have no power to do so,
and conceded, too, that great caution should be exercised
by the courts, in construing statutes, not to add to or take
anything from the language used; but it held that read-
ing into the statute the word "not" carries out its purpose,
and gives it an application intended by the legislature. The
decision of the trial court was based on the citation from
Lewis' Sutherland on Statutory Construction, supra; *Fra-
zier v. Gibson,* supra; *County of Lancaster v. Frey,* supra;
and *Hutchings v. Bank,* supra.

But these cases, and some of the others cited,—per-
haps all of them,—proceed upon the idea that, where the
context of the statute affords the means of correction, it
may be done. Under the authorities, it is proper for us to

take into consideration the object which the legislature sought to obtain, and the evil which it endeavored to remedy, and the surrounding circumstances and the ends intended to be accomplished, as well as the context; and statutes should be so construed as to give effect to the evident legislative intent. We may take into consideration the fact that automobiles are in common use, and that certain lights used on automobiles oftentimes blind the driver of a vehicle approaching in the opposite direction, and that the purpose of the legislature, in passing the act in question, was to correct this condition.

We are satisfied, from all these circumstances and from the record, that it was not the intention of the legislature to pass the act as it reads. Conceding this to be so, the question is, May we, under the circumstances and record, read into the statute a word which gives it exactly the opposite effect? We are not disposed to go that far. It seems to us that, to do so, we would be compelled to take into consideration matters not proper for us to consider, such as the evidence or opinions of witnesses testifying in this case, and the like. We could construe the statute as written; but, as said, we are satisfied such was not the intention. In this case, the word "not" was read into the statute, in order to work the acquittal of the accused. Nevertheless, it is a criminal statute. Might this be done in order to secure a conviction, if it were necessary to do so?

We reach the conclusion that, rather than to construe the statute as written, or to read into it the word "not," as was done by the trial court, we ought to, and do, hold that, as to this particular point, there was a failure of legislation, and that the defendant was properly discharged on that ground, there being no statute under which he could be convicted of the charge against him. The legislature is about to meet; and if the matter is brought to their attention, they can readily make the matter plain.

For the reason given, the judgment of the district court is—*Affirmed*.

LADD, C. J., EVANS and STEVENS, JJ., concur.