Roemer, to use, Appellants, *v.* Lancaster County.

12

Argued November 11, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*J. Andrew Frantz,* with him *Robert Ruppin,* for appellants.

*Daniel B. Strickler,* for appellee.

OPINION BY CUNNINGHAM, J., February 26, 1937:

On May 23, 1935, Willis G. Kendig and Charles F. Bowman, the present owners of a judgment entered against the County of Lancaster on October 26, 1901, issued a scire facias requiring the county to show cause why the judgment "should not be revived and why the said plaintiffs ought not to have their execution against it," etc.

The county answered, inter alia: "The said judgment having been entered October 26, 1901, and not having been revived since that time, although open on the records, cannot be proceeded on because the same is outlawed." The issue thus raised was tried before a jury and a verdict rendered in favor of the county. Plaintiffs' motions for judgment n. o. v. or a new trial were denied and they have appealed from the judgment entered upon the verdict.

The judgment was the result of the trial in the common pleas of an appeal from an award for damages to certain land, then owned by Conrad Roemer, occasioned by the laying out of Wabank Street in the City of Lancaster, between Love Lane and Spring Street, under an order of the quarter sessions.

The condemnation proceedings were governed by two special acts. The first, approved April 13, 1854, P. L. 352, provided that where streets were opened within the City of Lancaster any damages caused to buildings should be paid by the City of Lancaster, but damages for the taking of the land itself should be paid by the County of Lancaster; the second, approved April 18, 1873, P. L. 811, prescribed the procedure for the assessment of damages and provided that the damages

awarded, whether reduced to judgment or otherwise, should not be paid until the streets were actually *opened* for public use by order of the quarter sessions.

The jury of view, appointed to assess damages in connection with the laying out and opening of Wabank Street, awarded to Roemer the sum of $350. on November 22, 1899. No buildings were affected. During the pendency of his appeal to the common pleas Roemer died and a judgment by consent was entered in favor of his executor on October 26, 1901, in the sum of $425. against the County of Lancaster. By various assignments, this judgment became the property of the present appellants.

At the trial, appellants, through the deputy prothonotary of the county, placed in evidence the official docket covering the proceedings in the court of common pleas for the purpose of showing the entry of the judgment by consent on October 26, 1901; that there was no entry of satisfaction thereon; and that the docket was the only place in which such a satisfaction would appear.

The executor of Conrad Roemer testified the judgment had not been paid to him and had been assigned by him to a partnership trading as The Realty Company of Lancaster City. C. F. Widmyer, one of the partners, testified that, to the best of his knowledge, the judgment had not been paid but had been assigned, in turn, to the present appellants. Each of the appellants testified he had not received any payment on account of the judgment.

Appellants also introduced the testimony of Edward Edgerley, engineer for the City of Lancaster from January, 1930, to and through 1933, and as such familiar with the streets on the city plan. He stated that, to the best of his knowledge, no ordinance had ever been adopted officially opening the street but that it had been actually opened in the latter part of 1933 by the

State of Pennsylvania, which had taken control of the street as part of its state highway system. He also testified that so much of the land formerly owned by Roemer as was necessary to make the street sixty feet wide was actually taken at that time. No evidence was offered by the county.

The trial judge charged the jury there is a legal presumption that a judgment has been paid after a period of twenty years has elapsed and that the burden was on appellants to show that their judgment had not been paid. The material portions of the charge read:

"There is no dispute in the instant case that the judgment in question is more than twenty years old, that it still remains open on the records, and that there has been no revival since its original entry in 1901 ...... Has the presumption of payment arising after twenty years been overcome by the evidence submitted by and on behalf of the plaintiffs, or by proof that the judgment has not been paid, or are there circumstances shown by the evidence that adequately account for the delay in payment? Are you members of this jury convinced by the evidence that this judgment or any part thereof has not been paid? If you are your verdict should be for the plaintiffs for the full amount of $425.00, with interest thereon from September 7, 1933. On the other hand, if you are not so convinced then your verdict must be generally for the defendant, that is, the County of Lancaster, without specifying any amount."

The question of law involved upon this appeal is whether these instructions, to the effect that appellants were met in this case with the presumption that their judgment had been paid and had the burden of overcoming that presumption by affirmative proof it had not been paid, were correct. On this question, we are in accord with appellants. It is, of course, a correct

statement of the law that the ordinary judgment is presumed to have been paid after a period of twenty years. This presumption is based upon the common-sense theory that the judgment creditor would have normally taken steps to proceed against the debtor for the collection of the judgment before such a period of time had been permitted to elapse; if the judgment has not in fact been paid, it is only reasonable and fair to put the burden of the explanation upon him who was entitled to the money. There can, however, be no reason for beginning the computation of the twenty year period with a date prior to the time when the judgment was legally collectible, since this would be to create a presumption contrary to fact. As was said in the early case of *Diemer v. Sechrist,* 1 Penrose & Watts 419, "the computation runs from the period when the money was demandable."

It is clear from the Act of 1873 that the owner of the land, or his successor in title, was not entitled to payment of the award upon its entry, nor upon the entry of a judgment upon appeal, but, in the words of that statute, "no damage shall be paid until it shall have been ordered, as hereinbefore provided, that the streets, avenues, or highways, or any portion thereof, for the opening of which the damage is awarded, shall be opened." The phrase "as hereinbefore provided," refers to an order of the quarter sessions directing the opening of the street, made as the result of a resolution of the city council or a petition of any six freeholders. It was testified, without contradiction, that the street in question had not been actually opened until 1933, that no ordinance had directed the opening, and that in fact the street had been opened by the State Highway Department. This was conceded by the county in its argument.

We, therefore, have a situation where the actual opening did not take place until 1933 and where there

is a question whether there was ever any formal opening within the meaning of the statute. Under these circumstances, it seems clear to us that the twenty year period, after the expiration of which the presumption relied upon would become operative, could not, in any event, have begun to run.before 1933. Otherwise, we would be forced to the absurdity of holding that a creditor had, presumably, been paid a debt before that debt was due. This should not be and is not the law. Thus, in *Backestoss v. Commonwealth*, 8 Watts 286, it was held that the presumption of payment of an administration bond did not begin to run from its date but from the time when the plaintiff was entitled to resort to it, with the result that the court computed the time from the date when the administrator was fixed personally for the debt.

In *Wills v. Gibson*, 7 Pa. 154, it was held that where a judgment had been confessed but where the exact amount thereof was to be liquidated by the prothonotary, the period did not begin to run until the amount was actually liquidated. As the Supreme Court said: "These presumptions are legal inductions of fact from violent probabilities, founded by experience in the usual current of human actions in similar circumstances; and they are not entertained when they would lead to conclusions contrary to the usual course of events, or to establish a fact in itself improbable. Now it would be contrary to all experience to presume that a debtor had paid what he could not safely pay; and had the defendant undertaken to pay the judgment before the amount of it was ascertained, he would have been in danger of paying too much. Voluntary payments are tardily made, even in the clearest cases of fixed liability—they are never made while any thing remains to be adjusted."

The principle established by these cases is so clear that further discussion of the authorities is unneces-

sary. The cases cited by the county correctly state the general rule as to the presumption, but do not apply to a judgment which is not collectible but is purely cautionary.

*Camp et al. v. John et al.,* 259 Pa. 38, 102 A. 285, the authority chiefly relied on by the court below, was a case in which an attempt was made to collect a judgment more than twenty years after liability of the defendants had been fixed by the entry of judgment upon a collector's bond. The argument was made in that case that since the defendants were merely sureties, the presumption was not applicable to the enforcement of their liability. This argument was properly rejected, since the sureties were obligated to make good the judgment from the date on which it was entered. The holding has no relation to a case in which the judgment was not ripe for collection.

Our examination of the authorities leads to the inevitable conclusion that the instructions complained of were erroneous; no question of payment or non-payment should have been submitted to the jury. Appellants, by producing the proper docket, gave documentary evidence that the judgment had been entered and had not been satisfied of record. The county offered no evidence; the presumption of payment was not available to it; there was, therefore, no question of fact upon the record as it then stood to be presented to the jury for its determination. Appellants' point for binding instructions should have been affirmed. Ordinarily we would now reverse the judgment for the county and enter judgment against it in favor of the appellants.

There is, however, a further question in this case which prevents us from now deciding whether the judgment to which appellants are entitled should be entered against the County or the City of Lancaster. It is clear under the Acts of 1854 and 1873, supra, if they are the only statutes to be considered, that the county would

have been liable for the judgment if the street had been officially opened by order of the quarter sessions.[1] There are, however, further considerations which complicate the question: One is, as the court below points out, that under the Third Class City Act of June 23, 1931, P. L. 932, the City of Lancaster is now liable for the payment of all land damages in connection with the opening of city streets. Another is, that upon the record before us there is no proof that the street was ever opened in accordance with the provisions of the Act of 1873. The testimony is that the street was actually opened by the State Highway Department. This apparently was done as one of the results of the Act of June 3, 1933, P. L. 1492, No. 326, which, among others, adopted a portion of Wabank Street within the limits of the City of Lancaster, as a street to be taken over and maintained as a state highway. We have not been informed as to the relative obligations of the city, county or state in a case where the state takes over, as a highway, a street which has been laid out on a city plan but which has never been officially opened. It is obvious that as the street has in fact been opened, appellants are entitled to damages from some source, but it is not clear whether the county is the only party affected.

As these questions have not been fully developed, either below or before us, it seems advisable to return the record to the court below for further proceedings not inconsistent with this opinion.

The judgment is reversed and the record remitted; costs on this appeal to be paid by the County of Lancaster.

---

[1] See *County of Lancaster v. Frey,* 128 Pa. 593, 18 A. 478.